## BEKKER v. WHITE RIVER VALLEY RY. CO.

Sess. Laws, 1907, c. 218, § 1, after providing that on failure to settle for stock killed within a certain time double damages may be recovered from the railroad, provides that a railroad company, failing to fence against live stock and maintain cattle guards where the right to do so exists, shall be liable to the owner. Civ. Code, § 542, makes it the duty of a railroad company to fence, when the owner shall inclose his land on all sides, except the side adjoining a railroad. **Held,** that the act of 1907 was intended, not only to provide for double damages, but to change the existing law as to liability for killing stock on failure to fence; and that a railroad, having failed to fence where it has the right to, is liable for killing live stock at that point, irrespective of whether the adjoining owner has built fences on the remaining sides of his land.

Const. art. 3, § 21, provides that no law shall embrace more than one subject, which shall be expressed in its title. Sess. Laws 1907, c. 218, entitled "An act requiring railroad companies to pay double the amount of damages incurred for loss of live stock killed or injured through the negligence of such railroad company in certain actions," provides, not only for double damages, but that any railroad, failing to fence at all points where the right to fence exists, shall be liable to the owner of any stock killed or injured by reason of the want of such fence, and that to recover it shall only be necessary for the owner to prove the loss or injury to his property. **Held,** that while a statute capable of more than one interpretation must be given the one rendering it constitutional, yet that part of this statute, not referring to double damages, not being expressed in the title, is void, because violating the constitutional requirement, and so did not change the existing law relating to what constitutes negligence, in actions against railroads for killing of stock, or the rules regulating the probative force of the fact of the killing.

Though that part of Sess. Laws 1907, c. 218, entitled "An act requiring railroad companies to pay double the amount of damages incurred from loss of live stock killed or injured," which does not relate to double damages for the negligent killing of stock by a railroad is void, the remainder, relating to double damages, is valid, being presumably executed in accordance with the legislative intent appearing from the title.

Under Code Civ. Proc. § 311, providing that the relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint, but in any other case the court may grant him relief consistent with the case made out by the complaint, double damages may be awarded by the court, in an action against a railroad company for killing stock, even though not demanded in the complaint, where the facts pleaded by plaintiff entitle him to such damages.

In an action against a railroad company for killing stock, the ownership of the animals, their value, and the killing of the same by defendant's train, and defendant's negligence, were alleged in the complaint, as well as the serving of the notice of loss, which, after detailing the facts concerning the killing, notified the defendant that if settlement was not made within 60 days suit would be brought to recover double damages. **Held,** that nothing to the contrary appearing, the appellate court will presume that service of the alleged notice of loss was established by evidence, and that the trial court took judicial notice that the action was not commenced within 60 days; and hence the complaint stated a cause of action for double damages.

Matters of which courts take judicial notice need not and should not be pleaded; and hence it being the duty of the trial court to take judicial notice of the statute providing for double damages, in actions against a railroad company for killing stock, the statute need not be pleaded for a complaint to support such a recovery.

(Opinion filed October 3, 1911.)

Appeal from Circuit Court, Lyman County; Hon. Frank B. Smith, Judge.

Action by Ben Bekker against the White River Valley Railway Company. From the judgment for plaintiff, and an order denying its motion for a new trial, defendant appeals. Reversed and remanded.

*Chas. E. Vroman* and *Chas. D. Howe,* for appellant. *William Williamson, Jr.,* for respondent.

HANEY, J. The complaint in this action, all the allegations of which are denied by the answer, except defendant's corporate existence, is as follows: "(1) That the defendant was, at all times hereinafter mentioned, and now is, a domestic corporation organized and existing under the laws of South Dakota, and that at the times hereinafter mentioned defendant was, and still is, operating a railroad running through Lyman county, in said state; (2) that on the 16th day of July, 1908, by reason of defendant's neglect to construct a fence along its railroad track and maintain guards thereon, where the right of said company to fence and maintain cattle guards existed, one of the plaintiff's cows, without fault on his part, strayed on said track of defendant at a point about 30 rods east of the east railway switch at Reliance, in said county, and by reason of the defendant's negligence in

running and managing one of its engines and trains was then and there run over and killed, to plaintiff's damage in the sum of $40; that on the 9th day of January, 1909, plaintiff served a duly verified notice upon the defendant, notifying it of said killing of said cow, together with a claim for the value of said cow, at Reliance in said county, a copy of which said notice and claim for damages is hereto attached and made part hereof, but defendant refuses to pay plaintiff for his said cow; (3) and for a further cause of action, plaintiff alleges that on the 16th day of October, 1908, by reason of defendant's neglect to construct a fence along its railroad track and maintain cattle guards thereon, where the right of said company to fence and maintain cattle guards existed, one of the plaintiff's horses, being a black driving mare, without fault on his part, strayed on the track of defendant at a point about 1¾ miles west of said town of Reliance, and by reason of defendant's negligence and carelessness in running and managing one of its engines and trains was then and there run over and killed, to plaintiff's damage in the sum of $60; that on the 9th day of January, 1909, plaintiff served a duly written and verified notice upon the defendant at Reliance, S. D., notifying it of the killing of said horse, together with a claim for the value of said horse, a copy of which notice and claim for damages is hereto attached and made part hereof, but defendant refused and still refuses to pay plaintiff for said horse. Wherefore, plaintiff demands damages and judgment in the sum of $100, together with interest thereon, and the costs of this action." At the close of all evidence, the court, in effect, instructed the jury to return a verdict in favor of the plaintiff for the value of his animals, as shown by the evidence. Thus instructed, the jury found the value of the animals to be $115, a sum in excess of the amount alleged and demanded in the complaint. This excess having been remitted, judgment was entered for double the amount remaining, and this appeal taken.

The charge of the learned circuit court was based on the following statute:

"Section 1. Any corporation operating a railway and failing to properly fence the same against live stock and keep the same

in repair and maintain proper and sufficient cattle guards at all points where the right to fence or maintain cattle guards exists, shall be liable to the owner of any stock killed or injured by reason of the want of such fence or cattle guard, for the full amount of the damage sustained by the owner on account thereof, unless it was occasioned by his act or that of his agent; and to recover the same it shall only be necessary for him to prove the loss of or injury to his property. If such corporation fails or neglects to pay such damage within sixty days after notice in writing that a loss or injury has occurred, accompanied by an affidavit thereof, served upon any officer or station or ticket agent employed by said corporation in the county where such loss or injury occurred, such owner shall be entitled to recover from the corporation double the amount of damage actually sustained by him. If such railway company shall, within sixty days offer in writing to pay a fixed sum, being the reasonable market value of the animals so killed, and the owner thereof shall refuse to accept the same, then in any action thereafter brought for damages where such owner recovered a less sum as the value of the animals so killed than the amount so offered, then such owner shall recover only the actual value of such animals and the railway company shall recover its cost against such owner. No law of the state or any local police regulation of any county, township, city or town relating to the restraint of domestic animals, or in relation to the fences of farmers or land owners, shall be applicable to railway tracts, unless specifically so stated in such law and regulation. Upon depot grounds necessarily used by the public and the corporation, the operating of trains at a greater speed than eight miles an hour where no fence is built shall be negligence, and shall render such corporation liable for all damages occasioned thereby in the same manner and to the same extent, except as to double damages, as in cases where the right to fence exists.

"Sec. 2. All acts or parts of acts in conflict with the provisions of this act are hereby repealed." Laws 1907, c. 218.

When this statute was enacted, railway corporations were required to fence their tracks under certain conditions; they were

required to pay full damages for live stock negligently killed or injured by their trains; and the killing or injuring of live stock by their trains was prima facie evidence of negligence. Rev. Civ. Code, §§ 542-544. Rev. Code Civ. Proc. §§ 747, 748. It appeared from the evidence in the case at bar that a cow and horse owned by the plaintiff were killed on the dates alleged in the complaint, at points where defendant's track was not fenced, where defendant was not required to fence, but where it had a right to do so. It also appeared to the satisfaction of the trial court that defendant's trains were not negligently operated. So the charges of the court can be sustained only on the theory that chapter 218, Laws 1907, was intended to create an absolute liability for live stock killed at points where the corporation has a right to fence, and has not done so.

[1] Appellant contends: (1) That the act was merely designed to provide for double damages in cases where the corporation fails to pay the owner's claim within the prescribed period, after receiving the prescribed notice, and was not intended to change the then existing law in any other respect. (2) That if the language of the act requires the interpretation given it by the trial court that portion relating to the corporation's absolute liability is invalid, because it is not embraced by the title of the act. The first contention has been considered and held to be untenable since this appeal was taken. Lidel v. Railway, 25 S. D. 462, 127 N. W. 653; Jensen v. Railway, 25 S. D. 506, 127 N. W. 650. In Lidel v. Railway, this court said: "It is the contention of the defendant that this statute is controlled by section 542 of the Revised Civil Code, and the defendant contends that it was the duty of the defendant to construct a fence only where the adjoining landowner had complied with the provisions of section 542. While we agree with counsel that these two acts are both in full force, we are unable to agree in the conclusion that he draws therefrom. To our mind it is clear that the things sought to be effected by these two sections are entirely separate and distinct. Under section 542, when the adjoining landowner has erected the necessary fence, it then becomes the absolute legal

duty of the railway company, without any notice whatever, to erect a fence to connect with the landowner's fence and thus inclose the land of such landowner. Wold v. S. Dak. Central Ry. Co., 23 S. D. 521, 122 N. W. 583. The other law was passed for the purpose of fixing the liability of railroad companies where they had failed to properly guard their right of way, and it establishes certain rules of evidence in this class of cases, and provides a penalty of double damages under certain circumstances. It will be seen by a reading of this law that it does not make any provision under which a railroad company could be compelled to build any fence whatsoever, leaving section 542, supra, the only provision for compelling the erection of fences. Under chapter 218, supra, the railroad company may still, if it sees fit and is willing to run the risk of the damages therein provided, leave its right of way wholly unfenced. The defendant company having wholly failed to provide a cattle guard to protect its right of way where it had the right to erect same, and the plaintiff having proven the killing of the cow upon said right of way of defendant, as well as the value of such cow, the plaintiff's case was fully established, and the only thing that would relieve the defendant would be to show that through the affirmative act of the plaintiff or his agent the cow in question came upon the said right of way of defendant company."

[2] Appellant's second contention has not heretofore been considered. It demands serious attention. It is an elementary rule of construction that where the language of a statute is susceptible of more than one interpretation it must be given the one which renders the statute constitutional. "An interpretation which gives effect is preferred to one which makes void." Rev. Civ. Code, § 2440. This is the title of the act in question: "An act requiring railroad companies to pay double the amount of damages incurred from loss of live stock killed or injured through the negligence of such railroad company in certain cases." It clearly embraces only one subject, namely, the measure of damages in actions for loss of live stock killed or injured through the negligence of railway companies. It contains no intimation

of an intention to change the rule relating to the duty of railway corporations to fence their tracks; no intimation of an intention to establish a new rule as to what shall constitute negligence, no intimation of an intention to change the rule relating to the probative force of the fact of the killing. But the language of the act itself is plain and unambiguous. It clearly provides that a failure to fence, where the right to fence exists, shall constitute negligence per se; and, as heretofore suggested by this court, it clearly provides that the only defense in such a case shall be the fact that the owner or his agent has intentionally driven the live stock onto the right of way, for the purpose of having it killed or injured. The state Constitution declares: "No law shall embrace more than one subject, which shall be expressed in its title." Article 3, § 21. In an early case involving this constitutional provision, this court said: "It is the law, not the title, that can embrace but one subject. We have already referred to the reasons for this constitutional safeguard against dangerous legislation, and it is not difficult to see that the mischief which the provision was intended to prevent was that of putting into the law what was not indicated in the title, and not that of making the title broader than the law. Suppose a law had for its title 'An act to regulate the transfer of bills of exchange, promissory notes, and other contracts in writing,' but the body of the law only assumed to regulate the transfer of bills and notes, would the broader title have the effect to invalidate the more restricted law? We think not. But, on the other hand, if the title had been, 'An act to regulate the transfer of bills of exchange and promissory notes,' and the law had covered the subject of all other contracts in writing, it would clearly have been in violation of the Constitution, because it would undertake to legislate upon a subject not indicated in the title, and as to contracts in writing, other than bills of exchange and promissory notes, it would have been void." State v. Becker, 3 S. D. 29, 51 N. W. 1018. Concerning the same provision, the Supreme Court of Illinois has used this language: "It will be seen that this clause of the Constitution may be subdivided into two subordinate clauses: (1) No act hereafter passed shall contain more than one subject; (2) that subject must be expressed in the

title. Under this subdivision of the clause, it is apparent that an act might be void under the first, because it contained more than one subject, and when this is the case it is wholly immaterial whether these plural subjects be expressed in the title or not; the act is still void. Under the second subdivision of the clause, if the act contains but one subject, it may still be void, because the subject is not expressed in the title." Milne v. People, 224 Ill. 125, 79 N. E. 631. On the same subject, the Supreme Court of Minnesota has said: "It is true that general titles to statutes must be construed liberally and in a common-sense way, and it is sufficient if a general title is not a cloak for legislating upon dissimilar matters. But when the title is restrictive, carving out for consideration a part only of a general subject, legislation under it must be confined within the same limits, and all provisions of the act outside of such limits are unconstitutional, even though such provisions might have been included in the act under a broader title. The title is by the Constitution made the conclusive index to the legislative intent as to what shall have operation." Megins v. Duluth, 97 Minn. 23, 106 N. W. 89. Many more authorities to the same effect might be cited.

Where, as in this instance, the language of the title is clear and unambigous, there is no room for rules of construction. "The language tells its own story." Megins v. Duluth, supra. The title of this act is restrictive. It refers only to double damages. That is the one subject expressed. It not only fails to include the subject of absolute liability, but clearly excludes that subject. The language of the title expressly restricts the operation of the act to loss of live stock killed or injured *through the negligence* of the railroad company. Hence that portion of the act purporting to create a liability, in absence of negligence, is not only beyond the scope of the title, but clearly inconsistent with its plain and unambiguous terms. A more palpable violation of the constitutional provision before quoted is scarcely conceivable. To sustain this legislation in its entirety, giving full effect to the purport of its language, would require this court to either disregard the mandate of the Consitution, or strike from it a provision

found in nearly all, if not all, state Constitutions. The judges of this court have taken an oath to support the Constitution. That instrument itself provides the only method by which it may be amended. Therefore the act did not change the existing law relating to what constitutes negligence in cases of this class, or the rule relating to the probative force of the fact that plaintiff's animals were killed by defendant's train; and, as defendant introduced evidence tending to prove that its trains were properly operated, the trial court should have either submitted the questions of defendant's negligence to the jury, or have directed a verdict in its favor.

[3] As it clearly appears that the Legislature intended to provide for double damages for injuries to live stock when the corporation fails and neglects to pay the owner's claim within 60 days after receiving the prescribed notice—a provision not in itself unconstitutional (Jensen v. Railway, supra)—and as the elimination of the portion of the statute relating to the corporation's failure to fence leaves that which remains complete in itself, and capable of being executed in accordance with the apparent legislative intent, the statute must be sustained, so far as it relates to double damages. State v. Morgan, 2 S. D. 32, 48 N. W. 314; Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121.

[4] It is contended, however, that double damages should not have been awarded, even if the plaintiff was entitled to recover, for the reason they are not demanded in the complaint. Undoubtedly the general rule is that a judgment cannot properly be rendered for a greater sum, whether by way of debt or damages, than is claimed or demanded by the plaintiff in his declaration or complaint, and in many jurisdictions double or triple damages are not allowable, in absence of some reference in the pleadings to the particular statute upon which the claim for such damages is founded. In this state the matter is regulated by statute. "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him relief consistent with the case made by the complaint and embraced within the issues. Rev-

Code Civ. Proc. § 311. In this class of cases, double damages may be awarded by the jury under proper instructions, or the actual damages as found by the jury may be doubled by the court in rendering judgment. Jensen v. Railway, supra. It clearly appearing in the case at bar that the verdict was for actual damages only, it was proper for the court to add the statutory penalty, if such relief was consistent with the case made by the complaint and embraced within the issues; provided, of course, that the facts entitling the plaintiff to such relief were established by the evidence.

[5] Whether the case made by the complaint was one entitling the plaintiff to double damages depended on the well-pleaded facts therein, not on the demand for relief. These, in substance, are the issues presented by the pleadings: The ownership of the described animals, their value, the killing of the same by defendant's trains, defendant's negligence, and the serving of the notice of loss attached to and made a part of the complaint on the date alleged. After detailing the facts concerning the killing of each animal, the notice of loss concludes as follows: "You are also hereby notified that no settlement has up to date been made for the above animals by your company, and that if settlement is not made within 60 days suit will be brought to recover double damages for such stock." Nothing to the contrary appearing in the record on this appeal, this court will presume the service of the alleged notice of loss was established by competent evidence, and that the trial court took judicial notice that the action was not commenced within 60 days after such notice was served. Searls v. Knapp, 5 S. D. 325, 58 N. W. 807.

[6] It was the duty of the trial court to take judicial notice of the statute providing for double damages. Matters of which courts take judicial notice need not and should not be pleaded. So the complaint contains all the facts constituting a case for double damages, and the trial court did not err in awarding that relief. The allegations of the complaint relating to the notice of loss might have been more definite and certain; but it is not attacked on that ground, and could not be, in absence of a motion

to have such allegations made more definite and certain. If the notice of loss is insufficient in any respect, concerning which no opinion is expressed, there should have been a motion to strike, or an objection to the evidence offered to prove the service of the same. The notice is not attacked on this appeal; the only objection to the complaint being that the demand for relief does not justify double damages, which objection cannot be sustained.

Therefore, because of the error in the charge respecting the issue as to the defendant's negligence alone, the judgment and order refusing a new trial are reversed.