### STANDARD ACCIDENT INS. CO. v. CHERRY.

### No. 4019.

Court of Civil Appeals of Texas. Texarkana.
July 2, 1931.

Rehearing Denied July 11, 1931.

See, also, 36 S.W.(2d) 807.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Wm. V. Brown, of Texarkana, for appellee.

LEVY, J.

The suit was brought by the appellee to recover of appellant on an accident policy providing for weekly indemnity for injury suffered through external, violent, and accidental means. The appellee asked for indemnity at the rate of $15 a week for 33⁴⁄₇ weeks, with the penalty of 12 per cent. and attorney's fees. The petition alleged: "Plaintiff alleges that he received said bodily injuries through external, violent and accidental means while in the regular performance of his duty. That while attempting to put a 200-pound block of ice in an ice box or refrigerator, and while attempting to throw the 200-pound block of ice off his back in the ice box he received an unusual jerk or strain, which happened unintentionally or unexpectedly, which tore his ligaments, nerves, bloodvessels, and tissues loose in his back, shoulder, side and spine, and injured the muscles, tissues and ligaments of his back, spine, side and shoulder and other parts of his body as hereinabove set out, totally rendering him incapacitated of further performing the duties of his occupation, to-wit, that of truck driver, ice delivery all as hereinabove set out."

The appellant answered by general denial, and specially pleaded that appellee was not totally and continuously disabled and prevented from attending to any and every kind of duty, but, at most, one or more of the duties pertaining to his occupation.

The court submitted the cause to the jury upon special issues, whose findings, in effect, are: (1) That the plaintiff received bodily injury on June 10, 1929, which resulted directly, exclusively, and independently of all other causes through external, violent, and accidental means; (2) and that the injury wholly disabled plaintiff from performing and attending to any and every kind of duty pertaining to his occupation as insured against. The jury further found that the plaintiff was disabled from January 22, 1930, to September 18, 1930, and that $175 was reasonable at-

torney's fees. The court entered judgment for the total sum of $738.86.

The statement of the testimony of the appellee gives a clear outline of the suit. He was employed by an ice company as truck driver in daily delivery of ice to customers. His duty was to carry ice from his truck and put it in the houses or ice boxes of the company's customers. The usual weight of the ice he had to carry and put in the ice boxes ranged from fifty to three hundred pounds, as the customer desired. The appellee specially testified, as material to state, as follows:

"I am asked to describe how I received those injuries on June 10, 1929, and in what way, and what I was doing at the time. I was carrying a 200-pound block of ice, putting it in a high ice box. I had the ice on my back and was all bent over and had to get the ice up on the edge of the ice box. When I went to throw the ice back off my back it seemed just like it tore me in two there. I had been following that occupation somewhere close to two years and had carried ice in that way before. That was a large piece of ice that I was carrying but I have carried pieces larger than that. I have carried 300-pound blocks of ice; and have carried them on my back. I did not intend to injure myself at the time I put that ice on the box. I did not know it would hurt me when I did that because I had been doing it that way every day. I had put 200 pounds of ice in that particular ice box every day that summer up until then, and I did not expect it would do that. I had no idea I would be injured when I put the ice in that box in that manner on that occasion. This injury happened unexpectedly. I had followed this occupation for about two years prior to the time I received this injury."

Appellee further testified: "I had been working for the Powers Ice Company for about two years at the time I claim to have received this injury. This jerk in my side occurred down there at Atchison's Grocery Store. I am about five feet, two inches tall. I am asked to illustrate by this chair here about where the open space in that box was that I had to put that ice in. It was about right here (indicating). I am asked to stand up by the side of that and see how that would come up to me. As to how far it comes about my waist band, it comes about right there; about three inches above my waist band. The top of that chair would be about the height of the opening in the ice box; something near that. Supposing that grip there was the piece of ice that was in my truck that I was going to deliver that morning; I am asked to show the jury just how that happened and what happened. I can't show them unless I had the ice and a man here to carry it and show them, for a man can't get in the position with a grip on his back like he would have to with a 200-pound chunk of ice on his back. You have to

reach back like this (indicating) with your hooks. The ice is sticking up there; a 200-pound block of ice that you are laying away over there. I come right here and catch one end right there and edge that ice like that, and then I have got to tilt it up and stand it straight up in that box, like that; stand straight up with a 200-pound, straight up. That is what I did on that occasion, and that is where I broke my back down. That is the way it happened. I had been delivering ice that way for two years for this Company; right at two years. I had been delivering to Mr. Atchison all summer up until I got hurt that summer; up until the 10th of June. I began delivering ice there to Atchison's store and putting it in that box up in the winter. It had been six or seven months or more that I had been delivering ice. That was in June, the sixth month of the year."

On recross-examination appellee testified as follows: "When I was putting that piece of ice down there in Mr. Atchison's store that morning, as to whether or not there was anything that happened out of the ordinary except this strain or catch in my back—there was no strain or catch. It just seemed like—I heard it break loose; just tear loose. There was nothing unusual or out of the ordinary other than the tearing loose or breaking loose of that place back there, whatever it was. I unloaded the ice that morning just like I had on all other mornings before that, and just like I did all around town where the boxes are up like that. I carried it the same way."

■ There is evidence that the appellee since his injury cannot carry the ice to the houses as required of him, and is prevented from substantially doing the duties pertaining to his occupation. The jury finding in this respect is sustained and here adopted as a fact of the case.

The accident policy in suit contained the following provisions:

"Standard Accident Insurance Company of Detroit, Michigan, in consideration of the representations contained in the application, copy of which is indorsed herein and made a part hereof, and of the premium of $29.71, hereby insures Marion E. Cherry, hereinafter called the insured, whose occupation is truck driver —ice delivery, for the term of 12 calendar months from noon, Standard time, of the 29th day of October, 1928, against loss resulting from bodily injury, effective directly, exclusively and independently of all other causes through external, violent and accidental means except when intentionally inflicted while sane or insane, or sustained by the insured while insane, subject to all the conditions and limitations hereinafter contained, principal sum of $1,000.00; weekly indemnity $15.00.

"If such injuries shall wholly and continuously disable the insured from date of accident, from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability, but within 200 weeks from date of such accident, shall result independently and exclusive of all other causes in either one of the losses enumerated below or within 90 days from the date of the accident, irrespective of total disability, result in like manner in any one of such losses, the Company will pay the sum set opposite such loss, and in addition weekly indemnity, as provided in art. 2, to the date of death, dismemberment, or loss of sight. Only one of the payments named will be made for injury resulting from one accident.

"Weekly Indemnity.

"If such injury shall not result in any of the disabilities enumerated in Art. 1, but shall directly and immediately totally and continuously disable and prevent the insured from attending to any and every kind of duty pertaining to his occupation, the company will pay him the weekly indemnity at the rate mentioned above, ($15.00) for the entire period during which he is so disabled."

The two points presented, in effect, are that (1) the appellee's injury did not result through accidental means; and (2) the appellee was not rendered wholly disabled from attending to any and every kind of duty pertaining to his occupation. The second point should be, we think, overruled, as there is evidence which would warrant a finding by the jury, as within their province to make, of disability on the part of appellee to substantially do the work pertaining to his occupation. That satisfies the terms of the policy.

■ Upon the first point above the majority of the court are of the opinion that the jury were, on all the evidence, warranted in finding that the injury to the appellee resulted through accidental means. Carrying the ice in the manner done resulted in unexpected injury, and the injury should be considered as one due to accidental means. The cases in point and which rule the facts are: United States Mut. Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60; Bryant v. Casualty Co., 107 Tex. 582, 182 S. W. 673, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517; Pledger v. Accident Ass'n (Tex. Com. App.) 228 S. W. 110; International Travelers' Ass'n v. Francis (Tex. Com. App.) 23 S.W.(2d) 282; and many similar cases.

The writer does not concur in the conclusion reached by the majority. In carrying, as frequently done, the 200-pound block of ice to the ice box in the store, the appellee, as he says, did so in an "all bent over" position. Such position naturally put him in a very severe strain of body. As appellee further stated, this position of voluntary strain alone, without the intervention of any other cause or producing agency of injury, directly resulted in "the tearing loose or breaking loose"

of certain ligaments of his back. I think the injury so produced must be regarded as merely accidental in result, and not as an injury caused by accidental means. The severe strain put upon the body in carrying the ice was adequate cause for the injuries. The appellee could reasonably have foreseen and expected that an injury was naturally liable to be produced thereby. There was no efficient intervening cause or agency producing the injury, as can be seen to exist in all the cases cited above, occurring between the voluntary bodily strain of carrying the ice and the breaking loose of the ligaments of the back.

We have considered all the assignments of error, and think they should be overruled.

The judgment is affirmed.