METROPOLITAN LIFE INSURANCE COMPANY, d. b. a., *v.* MILTON LANDSMAN, p. b. r.

(*February* 10, 1933.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Paul Leahy* for Metropolitan Life Insurance Company.

*Charles F. Curley* and *James Malloy* for Milton Landsman.

Superior Court for New Castle County, No. 313, September Term, 1932.

PENNEWILL, C. J., delivering the opinion of the Court: Obviously, under the pleadings, the only question the

Court must determine is whether the injury complained of was caused by violent and accidental means.

The defendant correctly states in his brief that the clause contained in the policy "caused directly and independently of all other causes by violent and accidental means" has received two distinct and opposed interpretations from the courts of this country.

One line of decisions hold that any injury that is accidental is covered by the clause. The other draws a distinction between an accidental injury and an injury caused by accidental means. Under the former holdings the injury here complained of would be covered by the policy; under the latter it would not.

The plaintiff contends, however, that the weight of authority and the better reasoned cases support his contention that the policy in issue indemnified him against the injury he received.

On the other hand, the defendant claims that the weight of well considered cases, as well as of reason, supports its contention that there is a distinction between an injury caused by accident and one caused by accidental means.

The distinction has been expressed by some courts in general language, as follows:

An injury is caused by accident when the result is accidental and by accidental means when the means that caused the injury are accidental. It must be admitted that such distinction does not clarify the law very much and some courts have frankly said there is no distinction between an injury caused by accident and one caused by accidental means. But no matter how technical the distinction may seem to be, many courts have recognized and acted upon it. Perhaps the difference in judicial decisions may be shown by a case similar in principle to the present one, where the plaintiff in voluntarily attempting to perform an act in the usual course of his occupation over-

taxed his strength and imposed upon the vital organs a burden greater than they could bear. Such was a leading case cited by the defendant. *Rock v. Travelers' Ins. Co.,* 172 *Cal.* 462, 156 *P.* 1029, 1030, *L. R. A.* 1916*E*, 1197.

In that case the plaintiff undertook to carry a heavy casket down a flight of stairs. The entire operation was carried out precisely in the manner intended and designed by the plaintiff, but the exertion he assumed was beyond his strength and the result was a dilation of the heart and death. On these facts, the Court held, it could not be said the death was caused by bodily injuries affected through accidental means. In that case the Court said:

"A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. * * * 'The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are, to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.'"

The distinction the Court sought to make in that case, between accident and accidental means, is made clearer by the following words in the opinion:

"In carrying it [the casket] down he did not slip or stumble, nor did the casket fall against him."

The necessary inference from these words is, that if the injury had been caused by the plaintiff's slipping or stumbling, there would have been a cause preceding the injury which the plaintiff could neither anticipate or control, and in such case the injury would have been caused by accidental means. And this is conceded by the defendant to be the law, because it is said in its brief:

"For example, if the insured slipped, if the bag he was carrying fell from his shoulder, and he attempted to catch it, if he wrenched or strained his body and then fell—any or all of these events would, under this particular policy, be acts which were beyond his control, and the injury would, of course, be the result of accidental means."

The defendant has cited many cases and quoted at considerable length from some of them but they are all to the same effect as the *Rock Case* to which we have particularly referred.

Some of the other cases cited by the defendant are: *Bennetts v. Occidental L. I. Co.*, 39 *Cal. App.* 384, 178 *P.* 964; *Schmid v. Indiana Travelers' Acc. Ass'n*, 42 *Ind. App.* 483, 85 *N. E.* 1032, 1036; *Feder, et al., v. Iowa State Trav. Men's Ass'n*, 107 *Iowa* 538, 78 *N. W.* 252, 253, 43 *L. R. A.* 693, 70 *Am. St. Rep.* 212; *Shanberg v. Fidelity & Cas. Co.* (C. C. A.), 158 *F.* 1, 5, 19 *L. R. A.* (*N. S.*) 1206; *Fane v. Nat. Ass'n Ry. Mail Clerks*, 197 *App. Div.* 145, 188 *N. Y. S.* 222, 223; *Seipel v. Eq. Life Ins. Co.* (*C. C. A.*), 59 *F.* (2d) 544.

In order to make the distinction which many courts have made between accident and accidental means, as clear as possible, we will quote from a few of the cases cited above.

In the *Schmid Case,* it was said:

"As to what constitutes an accident, the reported cases are not all in accord. But our own decisions, with the weight of the decisions of other courts, we think hold that, where an injury occurs as the direct result of intentional acts, it is not produced by accidental means."

In the case of *Feder, et al., v. Iowa State Trav. Men's Ass'n,* the Court said:

"Although a result may not be designed, foreseen, or expected, yet, if it be the natural and direct effect of acts voluntarily done, or of conditions voluntarily assumed, it cannot be said to be accidental. * * * The evidence shows that the cause was the ruptured artery; but that was not accidental, if it was the natural result of an act voluntarily done by Feder. That he did anything but what he intended to do, in attempting to close the shutters, is not shown nor claimed. It is not even shown that he made any unusual exertion in what he did."

In the *Shanberg Case,* it was said:

"It would not help the matter to call the injury itself—that is, the rupture of the heart—an accident. That was the result and not the means through which it was effected. Carrying the door, or, after putting it down, the act of filling his lungs with air by drawing a long breath, was the means by which the injury was caused. Both were done by the assured voluntarily and in an ordinary way with no unforeseen, accidental, or involuntary movement of the body whatever. There was no stumbling, slipping, or falling; there was nothing accidental in his movements any more than there would be in walking on the street, or passing down the steps of his house. * * * Had the assured, while assisting in carrying the door, lost his balance and fallen and struck upon some unforeseen object, or slipped on the ice, his death might be said to have resulted from violent or accidental means."

In the *Fane Case,* the Court said:

"It is undoubtedly true that the act of lifting the mail bag produced an unforeseen consequence, and the consequence might commonly be called an accidental injury, and the result of lifting the bag might be accidental; but the wording of the policy is, 'through * * * accidental means.' The means which the plaintiff used to place the bag were exactly those which he intended to use, and precisely those he had used on many other occasions. It cannot be said that the means were accidental. The most that can be said is that the result was accidental. He was doing what he meant to do, and doing it in the way he meant to do it. An unexpected result followed, but that result did not follow through accidental means. He was injured from doing what he intended to do and doing it in exactly the way he intended to do it, and the rupture was not the result of accidental means. This conclusion is sustained by many decisions."

Perhaps the latest case on the subject is the *Seipel Case* in which the plaintiff was injured in lifting a very heavy wheel. The Court in that case held that the injury received was not the result of external, violent and accidental means.

It would be unprofitable to quote from other cases, which are very numerous but to the same effect.

There are, however, cases, and well considered ones, which recognize no distinction between accident and accidental means.

The plaintiff cites a leading case on the subject and one that is often mentioned, *United States Mutual Acc. Ass'n v. Barry,* 131 *U. S.* 100, 9 *S. Ct.* 755, 762, 33 *L. Ed.* 60. The plaintiff claims that this case is an authority that strongly supports his contention, but when the case is carefully

considered, it does not seem to differ much in principle from those relied on by the defendant.

We quote at some length from the opinion of the Appellate Court:

"It is further urged that there was no evidence to support the verdict, because no accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. It must be presumed, not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not."

Continuing the Court said:

"The court properly instructed them [the jury] that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected'; that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

It appears, therefore, that the Court distinctly recognized the distinction between an injury caused by accident and one caused by accidental means, as expressed in the cases cited by the defendant, the only difference being in the application of the principle, which was left to the jury.

Another leading case relied on by the plaintiff is *Horsfall v. Pac. Mutual Life Ins. Co.*, 32 *Wash.* 132, 72 *P.* 1028, 1029, 63 *L. R. A.* 425, 98 *Am. St. Rep.* 846.

In that case the insurance was against the effect of bodily injuries "caused solely by external, violent and accidental means."

After defining an injury by accident in the usual terms, the Court said:

"So a strain of the muscles of the back, caused by lifting heavy weights in the course of business, is injury by accident or violence

'occasioned by external or material causes operating on the person of the insured.' ※ ※ ※ The evidence shows conclusively that the deceased was a strong and apparently healthy man of 58 years, who had never been sick, and who was accustomed to lift from 200 to 250 pounds without difficulty; that immediately after he had made the lift of one end of the bar, weighing from 350 to 400 pounds, he became sick and 'deathly pale.' ※ ※ ※ The exertion had caused a violent dilation of the heart. The result certainly was unexpected. It did. not take place according to the usual course. of things. If, instead of a sprain of the muscles of the heart, the deceased had sprained the muscles of his back, or arm, or ankle, it certainly could not have been reasonably claimed that the result was not due to accident. ※ ※ ※ We think the evidence shows an accident within the meaning of the policy."

Even this case is not wholly inconsistent with the defendant's cases which hold that the result may be accidental when the means that caused the result were not accidental.

Another case, the importance and pertinency of which is stressed by the plaintiff is *Young v. Railway Mail Ass'n,* 126 *Mo. App.* 325, 103 *S. W.* 557, 562, in which the Court used the following language:

"Accident assurance companies do business mostly with the common people, and the term 'accident,' as used in these policies, should be construed most strongly against the companies, and be defined according to the ordinary and usual understanding of its signification. 'Any unusual and unexpected event attending the performance of a usual and necessary act,' whether the act be performed by the party injured or by another, is ordinarily and usually understood to be an event which happened by accident: In the foregoing cases it seems to us a too strict and illiberal definition of the term was adhered to. At any rate, they are not reconcilable with the general trend of the best considered American cases, which hold that accidental means are those which produce effects which are not the natural and probable consequence of the act. 'An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' "

In that case the injury was received when the insured was assisting in lifting or pulling a sack of mail into the car.

The Court concluded that the question, whether or not the plaintiff's injury was caused by "external, violent and accidental means" was for the jury.

The Court in the case of *Lickleider v. Iowa State Trav. Men's Ass'n*, 184 *Iowa* 423, 166 *N. W.* 363, 366, 168 *N. W.* 884, 3 *A. L. R.* 1295, comments as follows on the rule the defendant contends for:

"There is, however, another alleged definition which has had a degree of judicial sanction which ought not to be passed without notice. According to this definition, if correctly interpreted by counsel for the defense, an injury happening to the insured through his own voluntary act is not an accident, nor is his hurt to be attributed to accidental means—a proposition which is wholly at variance with every statement of the true rule as illustrated in the numerous authorities above cited. It may be, and it is true, that if the insured does a voluntary act, the natural, usual, and to be expected result of which is to bring injury upon himself, then a death so occurring is not an accident in any sense of the word, legal or colloquial, and it is only when thus limited that the rule so stated has any proper application. * * * To say that the deceased in the case at bar did just what he attempted and intended to do, that is, he attempted to remove and did remove the tire from the wheel, and therefore there was no accident or accidental means producing his injury, is to beg the whole question and to ignore the well-established meaning of words."

Other cases cited by plaintiff below include: *Pervangher v. Union Cas. & Sur. Co.*, 85 *Miss.* 31, 37 *So.* 461; *Budde v. Nat. Trav. Ben. Ass'n*, 184 *Iowa* 1219, 169 *N. W.* 767; *Pledger v. Bus. Men's Ass'n* (*Tex. Com. App.*), 228 *S. W.* 110; *Patterson v. Ocean Acc. & Guar. Corp.*, 25 *App. D. C.* 46; *Standard Life & Accident Ins. Co. v. Schmaltz*, 66 *Ark.* 588, 53 *S. W.* 49, 74 *Am. St. Rep.* 112; *Summers v. Mutual Aid Ass'n*, 84 *Mo. App.* 605; *Martin v. Trav. Ins. Co.*, 1 *Fort. & F.* 505, 175 *Eng. Rep.* 828.

There are very many other cases that might be cited on either side of the question here involved, and it is impossible to say on which side is the greater number. We have quoted at length from a few on each side that seem to have been well considered, for the purpose of assisting the Court in determining whether the injury received by the plaintiff was caused by accidental means. This has been a perplexing question for many Courts and given rise to much refined and technical reasoning. Perhaps the difficulty has been as much in the application of the rule as in its recognition.

Courts that find no distinction between an injury caused by accident and one caused by accidental means, concede that if the insured does a voluntary act, the natural and usual result of which is to bring injury upon himself, it is not an accident because it might have been expected. But Courts that recognize the distinction go a step further and say that although a result may not be foreseen or expected, yet if it be the direct effect of an act voluntarily done, or of conditions voluntarily assumed, it cannot be said to be accidental. These cases make a difference between the result and the means that cause the result or injury. The injury, they say, may be unexpected, and in that sense accidental, but the means that caused it are not accidental because they were the voluntary and usual means employed by the insured to accomplish the act he wished and intended to accomplish. In the language of the Court in the *Barry Case, supra:*

"* * * If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

This is taken from one of the plaintiff's cases. And the distinction recognized in the *Barry Case* is illustrated in some other cases in this way: If the person who is lifting or carrying a load falls, in the effort to carry it, and the injury is produced by the fall, it is caused by accidental means, it being an unexpected occurrence preceding the injury.

Applying the rules we have mentioned, and attempted to describe to the case in hand, what should be the result? The plaintiff, at the time of his injury, was voluntarily carrying, or attempting to carry, a sack of potatoes on his shoulder, in the usual way, no doubt in the way he had often carried such a load before and in the way he wanted to carry it. The injury he received was unexpected and un-

foreseen. It was, therefore, accidental in a way. But while the injury or result was accidental because unexpected, can it be said that the means which caused the injury were accidental? We must distinguish, if there is a difference, between the result and the means that produced it. What were the means in the case before us? Nothing more nor less than carrying, or attempting to carry, the sack of potatoes on the shoulder. Surely then, there·was nothing· accidental in the means which the plaintiff employed, as there would have been if he had unexpectedly fallen with his burden and the fall had been the means of his injury.

While we agree with the language used by the Court in the *Young Case, supra,* that these policies should be construed strongly against the companies that issue them, and the terms employed therein be defined according to the ordinary and usual understanding of their signification; and while we realize that some of such terms, including "accidental means," are impossible of understanding by the persons with whom the companies deal, still the policy and its acceptance, constitute a contract which the Courts must construe in accordance with established rules of law.

The conclusion of the Court is that the injury received by the plaintiff was not caused by violent and accidental means within the meaning of the policy sued on. No cause of action, therefore, is shown and defendant's demurrer must be sustained.