[File No. 6613.]

CLARA JACOBSON, Respondent, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION, a Corporation, Appellant.

(289 N. W. 591.)

Opinion filed January 8, 1940.  Rehearing denied January 16, 1940.

*Zuger & Zuger,* for appellant.

*J. K. Murray,* for respondent.

Burr, J. On January 28, 1928, the defendant company issued a policy of insurance to Henry J. Jacobson, which policy, among other provisions, sets forth what are known as "Insuring Clause" and "Part A."

Under the "Insuring Clause" the defendant insured Henry J. Jacobson "against loss of life, . . . or time, *resulting directly and independently of all other causes,* from bodily injuries sustained through purely *Accidental Means,* . . . and against loss of time on account of disease contracted during the term of this Policy. . . ."

"Part A" provides: "If the Insured shall, through *accidental means,* sustain bodily injuries as described in the Insuring Clause, which shall, *independently and exclusively of disease* and all other causes, immediately, continuously and wholly disable the Insured from the date of the accident . . . ," the defendant would pay certain stated sums. The italics are ours.

The only portion of the policy with which we are concerned is the one dealing with the insurance against loss of life. It will be noted that this has a scope broader than the provision for payment under "Part A." Both provisions deal with loss resulting from bodily injuries sustained through accidental means; but the provision insuring against loss of life does not exclude disease which may be the direct result of bodily injuries. "Part A" deals with disablement. While the "Insuring Clause" deals with loss of time, this loss must be on account of disease. The bodily injuries insured against in "Part A" exclude disease.

This policy was kept in force during all the time involved in this controversy and the plaintiff is the beneficiary named in the policy.

There is little, if any, dispute in the facts. On July 23, 1938, the insured was fifty years of age and in good physical condition, strong, robust, and active. He was an employee of the Patterson Land Company and on that day undertook to load a wild horse into a truck.

Sometime immediately prior to this time others had made the attempt and failed. The horse was rounded into a barn, roped, and a war bridle put on. The insured worked and struggled with the horse for a period of about two hours, during which time the horse dragged the insured around. During the struggle with the horse he was not knocked down nor kicked, nor did he receive any injuries to the body that were noticeable from inspection, nor was any internal injury shown. Eventually he succeeded in getting the horse onto a truck.

The exertion was so strenuous that the insured was completely exhausted at the end of the struggle, complained of being tired, and when he went home complained of being sick and went to bed. Up to that time he had been in apparently good health and worked hard with no complaints. He was not confined to his bed all the time and did occasional work. About the 2d of August he worked for two hours in company with others in shoveling grain, but from time to time had complained of not feeling well.

On August 14 a doctor was called and found him in bed with an attack of acute influenza and high fever. Upon a later examination the doctor discovered a situation which he termed a coronary thrombus, "a blood clot forming in one of the main blood vessels that supplies the heart muscles."

The insured died August 16, 1938, and this physician certified that the death "was due to coronary thrombosis and influenza." The record does not show any autopsy.

At the trial the doctor testified that this condition of coronary thrombus could not have existed prior to the time of the exertion with the horse; that when he examined the insured he found no irregularity of the heart or any heart trouble except that the heart was rapid as "a natural sequence of his fever;" that influenza causes a rapid heart action; that the influenza might have caused the coronary thrombosis of which he died; that this condition could be caused by the severe exertion of July 23; that it was entirely out of the question for him to state whether the blood clot was the result of the influenza or whether the exertion had so weakened his system that he was subjected to this condition; that the coronary thrombosis could have been caused by the influenza, but that in his opinion the exertion had so weakened his condition that he was subjected to the influenza and that "the illness that fol-

lowed afterwards was the influenza and finally the thrombosis." He testified that he saw the patient some three weeks after this struggle; that he told him "he was suffering at that time with acute influenza;" that he had a high fever; that it was reasonably probable that the influenza could have come from the injury in this, that the exertion weakened his condition so that he would have less resistance; that "If his resistance to that infection becomes lowered then he may become sick from germs he has carried with him for years and years, and germs that hadn't caused him any harm before that;" that an injury which came through the exertion could give rise to a bruise that could be responsible for the blood clot; and that it was his opinion that the condition of coronary thrombosis and influenza was "in all probability brought about by this injury or his tussle with the horse  . . .  ;" that he could not answer definitely whether he would have contracted influenza or thrombosis if it had not been for the injury. Later he stated that this exertion could have prepared the ground for the heart trouble and might have started the change; that the influenza might have caused the thrombosis and that influenza might cause heart trouble and that one or both may have caused the thrombosis. When asked with reference to whether the coronary thrombosis was caused by the influenza and by the prior exertion and whether "You couldn't state that one or the other definitely was, it is impossible?" (that is, it is impossible to state whether caused by one or the other), he said, "That is entirely out of the question;" but from his examination he could state that the coronary thrombosis might have been caused by the influenza. He examined the patient and found no abrasions or bruises on the body.

The defendant declined to pay under the terms of the policy and this action was brought. The complaint seeks to recover for loss of life according to the terms provided for in the "Insuring Clause" and "Part A."

The answer denies death from accidental means and all liability under the policy.

The case was submitted to a jury and at the close of plaintiff's case defendant moved to dismiss on the ground "that by the terms of this policy . . . it is specified, 'if the insured shall through accidental means sustain bodily injuries and result in his death;' " that if the insured received any injuries they "were not caused through accidental

means as required by the terms of the policy;" that it was a condition precedent to recovery that not only should the insured "have died from the bodily injuries sustained through accidental means, . . . in addition, that those injuries independently and exclusively of disease and all other causes shall result in his death, and that there is no evidence in this case that the over-exertion and the subsequent heart trouble, if caused by the over-exertion, was the sole cause of death."

The defendant urged that the testimony shows clearly that the disease of influenza was a contributing factor to death and may have caused it; that the evidence shows the heart trouble was caused by influenza; that "there is no evidence showing the death of Henry Jacobson was caused directly by whatever bodily injuries he may have received in loading this horse."

The motion was resisted and denied, and at the close of the entire case defendant moved for a directed verdict on the same grounds, which motion was denied.

The jury returned a verdict in favor of the plaintiff. Defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial, which motion was denied. Judgment was entered on the verdict and defendant appeals.

On this appeal we view the matter from the standpoint most favorable to the plaintiff, who discusses the case under three heads in the form of questions:

1. Was the insured's death due to accidental means?

2. Was such death by accident independent and exclusive of disease and all other causes?

3. Did such accident and injury which subsequently resulted in death continuously and wholly disable the insured from the date of the accident until his death?

Plaintiff endeavors to answer all of these questions in the affirmative.

Under the contract of insurance the loss of life must have resulted from bodily injuries sustained through purely accidental means, directly and independently of disease and all other causes. If this be shown, the plaintiff was entitled to the amount allowed by the jury.

The record does not show any bruise, broken bones, rupture, or any other evidence of bodily injury, external or internal. The claim is that the over-exertion on July 23 so affected the insured as to lower his re-

sistance to disease and rendered him more susceptible to bodily affliction so that when he contracted influenza and the blood clot formed he died.

The courts of the different jurisdictions are not agreed as to the scope of the term "accidental means" when used in connection with such contracts as are involved here. A large number of the jurisdictions require proof that the cause of death was purely an accident and exclude all cases where, as in the case at bar, the insured planned and undertook a certain course of work and during the progress of the work suffered an injury from an unforeseen and undesigned cause. This line of authority confines itself strictly to the proposition that the work in which he was engaged was not accidental; it was planned, designed, intended, and therefore the natural results which flowed therefrom, even though they resulted in death, could not be said to constitute loss of life through purely accidental means. The Minnesota supreme court characterizes the position thus: "From a strictly technical point of view the defendant's position finds a logical foundation upon the theory that one may do certain acts the result of which acts may produce unanticipated consequences, and perhaps accidental death; but the means are precisely what he intended." Taylor v. New York L. Ins. Co. 176 Minn. 171, 222 N. W. 912, 60 A.L.R. 959.

See also Appel v. Ætna L. Ins. Co. 86 App. Div. 83, 83 N. Y. S. 238, affirmed without opinion in 180 N. Y. 514, 72 N. E. 1139; Northam v. Metropolitan L. Ins. Co. 231 Ala. 105, 163 So. 635, 111 A.L.R. 622; and Anderson v. Travelers' Protective Asso. (C. C. A. 5th) 74 F. (2d) 170.

In United Commercial Travelers v. Shane (C. C. A. 8th) 64 F. (2d) 55; Losleben v. California State L. Ins. Co. 133 Cal. App. 550, 24 P. (2d) 825; Szymanska v. Equitable L. Ins. Co. 37 Del. 272, 183 A. 309; Provident Life & Acci. Ins. Co. v. Watkins, 256 Ky. 645, 76 S. W. (2d) 889; Lawrence. v. Massachusetts Bonding & Ins. Co. 113 N. J. L. 265, 174 A. 226, it is held that it must appear that the means was accidental, and it is not affected by the fact that the result was unusual, unexpected, or unforeseen. See also McFarland v. Massachusetts Bonding & Ins. Co. 157 Tenn. 254, 8 S. W. (2d) 369, 64 A.L.R. 962; Harloe v. California State L. Ins. Co. 206 Cal. 141, 273 P. 560; Taylor v. New York L. Ins. Co. 176 Minn. 171, 222 N. W.

912, 60 A.L.R. 959; Mehaffey v. Provident Life & Acci. Co. 205 N. C. 701, 172 S. E. 331, 333; Arnstein v. Metropolitan L. Ins. Co. 329 Pa. 158, 196 A. 491, 493; Griswold v. Metropolitan L. Ins. Co. 107 Vt. 367, 180 A. 649, 652. In this latter case the court says: "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds."

In the California case it is stated: "Where act is done in manner intended, ensuing injury does not result from 'accidental means,' notwithstanding result may have been unexpected and be such as to constitute accidental injury, since 'accidental means' involves element of unexpectedness in act leading to injury." However, therein the court makes allowance for "means" or acts not intentionally done. The supreme court denied a hearing.

In Pope v. Prudential Ins. Co. (C. C. A. 6th) 29 F. (2d) 185, the court calls attention to the obvious distinction between an accidental result and the result of an accidental cause.

In Metropolitan L. Ins. Co. v. Landsman, 35 Del. 384, 165 A. 563, it was held that the injury was not caused by accidental means when the insured while attempting to lift a sack of potatoes wrenched and sprained his shoulder and back. To the same effect is Parker v. Provident Life & Acci. Ins. Co. 178 La. 977, 152 So. 583. Here a mechanic sustained a hernia as the result of a hard pull on the handle of a jackscrew.

Another view would consider that though the insured was engaged in a line of work that he had planned and designed, neverthless if his work therein gave rise to an unforeseen, unexpected, and undesigned result which ordinarily would not have been anticipated, such result will be construed as "accidental means" under the provisions of policies similar to the one in question. In support of this we have such cases as Western Commercial Travelers' Asso. v. Smith (C. C. A. 8th) 85 F. 401, 40 L.R.A. 653, wherein Judge Sanborn, in writing the opinion states: "An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with

the design of producing, . . . is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it."

In the case Judge Sanborn had under consideration there was an abrasion of a toe unexpectedly caused and without design by unforeseen, unusual, and unexpected friction in the act of wearing a new shoe.

This rule is that where normal and ordinary means employed in the usual way instead of producing the usual, normal, and expected results, produce an entirely different and fatal result, this result is an accidental one, because an unknown factor, unexpected and unforeseen, has entered into the circumstances, which the authorities call a vis major—and when the vis major is so connected with the means employed as to be part and parcel of what would otherwise have been a voluntary act, then the means employed, though employed voluntarily, take color from the unknown and fatal factor and become accidental. This is the view in International Travelers' Asso. v. Francis, 119 Tex. 1, 23 S. W. (2d) 282. See also Ft. Worth Mut. Benev. Asso. v. Miller (Tex. Civ. App.) 280 S. W. 338; Ross v. International Travelers' Asso. (Tex. Civ. App.) 283 S. W. 621; Brown v. Continental Casualty Co. 161 La. 229, 108 So. 464, 45 A.L.R. 1521; and Clarkson v. Union Mut. Casualty Co. 201 Iowa, 1249, 207 N. W. 132.

In this Iowa case the insured was "loading a heavy log upon a wagon and after he had placed it upon his shoulder, he felt something give way, and he fell with the log against the wagon and to the ground." This resulted in injury. The same court adopted the same view in Dawson v. Bankers' Life Co. 216 Iowa, 586, 247 N. W. 279, 282.

In Donohue v. Washington Nat. Ins. Co. 259 Ky. 611, 82 S. W. (2d) 780, it was held that it was for the jury to determine whether the injury resulted from an accident sustained through accidental means where there was evidence to show that the insured attempted to pick up a can weighing 40 lbs. and was stricken with a severe pain in his hip and fell to the ground, striking his hip. To the same effect is Standard Acci. Ins. Co. v. Cherry (Tex. Civ. App.) 40 S. W. (2d) 873, where an ice man sustained an injury to his back while attempting to put a 200 lb. block of ice in a high ice box, the injury occurring

as he was bending over in an attempt to throw the ice off his back. Also Prehn v. Metropolitan L. Ins. Co. 267 Ill. App. 190, where death resulted from a rupture of the spleen caused by a fall when the insured, some months later, suddenly arising from a tilted chair suffered pain immediately afterwards. To the same effect are: Konschak v. Equitable Life Assur. Soc. 186 Minn. 423, 243 N. W. 691; Goethe v. New York L. Ins. Co. 183 S. C. 199, 190 S. E. 451, 458; General Printing Corp. v. Umback, 100 Ind. App. 285, 292, 195 N. E. 282; Urian v. Equitable Life Assur. Soc. 310 Pa. 342, 165 A. 388.

The plaintiff places great stress on the rule laid down in Druhl v. Equitable Life Assur. Soc. 56 N. D. 517, 218 N. W. 220, 60 A.L.R. 962. Here this court was considering a clause in "a life insurance policy providing for double indemnity in event the death of the insured results 'solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means,' and is not the result of or caused directly or indirectly 'by disease or illness of any kind, physical or mental infirmity.'" In this case, though the insured was voluntarily engaged in work which he had planned and designed—plowing a field—yet the accident which happened, "while guiding a plow which was being drawn by four horses," was the moving cause of his death. The plow struck a stone, unforeseen apparently, and the plow handle struck the insured on the abdomen. Though the autopsy showed the deceased had physical defects, yet he was in good health at the time of the accident, and we held that it was the accident alone which was to be considered the cause of death, even though it was shown he had a diseased condition which may have been aggravated by the accident. The insured died of obstruction of the bowels, and there was ample evidence to show that this obstruction "was caused directly, exclusively and independently of all other causes by the blow which Druhl received from the plow handle; and that the obstruction of the bowel was the direct cause of death." (p. 523.)

Plaintiff cites the cases of Taylor v. New York L. Ins. Co. 176 Minn. 171, 222 N. W. 912, 60 A.L.R. 959; Bennett v. Travelers' Protective Asso. 123 Neb. 31, 241 N. W. 781; Russell v. Glens Falls Indem. Co. 134 Neb. 631, 279 N. W. 287; Wiger v. Mutual L. Ins. Co. 205 Wis.

95, 236 N. W. 534; and O'Connell v. New York L. Ins. Co. 220 Wis. 61, 264 N. W. 253.

In these cases the general holding is that while the "means," strictly speaking, may have been intentional, the cause of death was not intentional and that the unintentional act was the cause of death. Such is illustrated by the case of O'Connell v. New York L. Ins. Co. 220 Wis. 61, 264 N. W. 253. In this case the insured, while working in a sewer, suffered heat prostration so that when he returned to his shop he fell, striking the base of his skull, from which developed pneumonia which caused his death. The court held that the injury resulting from the heat prostration—that is, the pneumonia and death— was "not only accidentally effected, but are produced by 'accidental means.' . . ." However, provisions of the policy involved, as set forth in the opinion, make no reference to disease. The action was one to recover double indemnity conditioned upon proof "that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause. . . ." The only matter which the court was called upon to consider was whether the result was effected by accidental means. There is nothing in the case to indicate what would have been the holding of the court in case the accidental means must be shown to be "independently and exclusively of disease."

Bodily injury is not confined to external injury. It is physical but not necessarily caused by mechanical means. Indeed, it is held that deaths from the contraction of typhoid fever (Gasperino v. Prudential Ins. Co. — Mo. App. —, 107 S. W. (2d) 819, 823); from sunstroke (Maryland Casualty Co. v. Hazen, 182 Okla. 623, 79 P. (2d) 577, 578; Goethe v. New York L. Ins. Co. 183 S. C. 199, 190 S. E. 451); and rupture caused by straining in vomiting (Ross v. International Travelers' Asso. (Tex. Civ. App.) 283 S. W. 621) are the result of bodily injury.

The distinction between a result produced by means unexpected, unintended, and unanticipated and a result produced by the actor's exact intention is well set forth in Gasperino v. Prudential Ins. Co. — Mo. App. —, 107 S. W. (2d) 819, supra, and McGinley v. John Hancock Mut. L. Ins. Co. 88 N. H. 108, 184 A. 593.

But applying the more liberal rule to the facts in the case, the plain-

tiff in any event would have to show that the over-exertion was the real cause of death, even though death may not have resulted immediately. If the facts showed that bodily exertion so affected the heart as to cause an effect that could not reasonably be anticipated, and thus caused his death, the facts would be within the purview of this rule.

However, the evidence in this case is undisputed that the defendant did not die from over-exertion which caused death. The only doctor who testified was the doctor who attended the insured during his last illness and was a witness for the plaintiff. However, the evidence shows the insured received no injuries whatever that had any external appearance. It is true the question was asked time and again in regard to what would be the effect of the injuries received by the deceased; but the only injury that is shown is that of over-exertion and whatever internal effect it would have, the latter not being shown. The doctor himself, in referring to the "injury," says, "That injury or his tiring himself out so badly with that horse."

There is no liability of the defendant on this policy unless the accidental means "independently and exclusively of disease" caused the loss. It cannot be said that the influenza or the blood clot was caused by the over-exertion in such a way as to bring the case within the rule set forth in Druhl v. Equitable L. Ins. Co. 56 N. D. 517, 218 N. W. 220, 60 A.L.R. 962, supra. Apparently without the influenza the death would not have occurred. There is no proof that the over-exertion caused the influenza or there was any latent disease or condition of the insured so that death could be said to be the result of such being set in motion. Liability cannot be based upon pure speculation. The utmost that can be said in this case is that because of the over-exertion the insured was thoroughly exhausted and the physical effect was to cause him to lose sleep, seek rest, and loss of appetite. Three weeks afterwards, from some unknown source, he contracted influenza, which greatly affected his heart. A blood clot formed and through this combination of influenza and the blod clot he died. Whether the blood clot was formed because of the influenza and its effect upon his heart, or whether it was the slow development of over-exertion and exhaustion was not determined. The doctor testifies it could be because of either cause, and it was his opinion that the exhaustion lowered the resisting power of the patient so as to render him more susceptible to influenza

and thus he contracted the disease from which he died. It is clear there was no evidence in the case upon which the jury could determine that this over-exertion, "independently and exclusively of disease and all other causes," was the cause of the loss sustained.

We are not prepared to say that the action should be dismissed. Adherence to the old rule would require such dismissal; but we are satisfied that the modern rule is more in harmony with the theory and the principle of the contract and the intent of the parties. Therefore, a new trial is granted, and thus the plaintiff may have an opportunity to show definitely and clearly that the death was the direct result of the "accident" as that term is to be interpreted in such cases as this. The judgment is reversed and a new trial is ordered.

NUESSLE, Ch. J., and CHRISTIANSON and BURKE, JJ., concur.

MORRIS, J. (dissenting in part). I agree with the majority of the court in holding that there is no liability under the terms of the policy in this case unless death was caused by accidental means, independently and exclusively of disease. I disagree with the majority upon the proposition that a new trial should be granted. Under the facts presented by this record the deceased over-exerted himself on July 23. His death resulted from a combination of influenza and coronary thrombosis on August 16. The influenza did not develop until three weeks after the over-exertion. Thrombosis developed three days after the influenza. There is no evidence of injury either external or internal. Should it be assumed that the exhaustion rendered the deceased more susceptible to one or both of the diseases which caused his death, no recovery can be had under this policy. Judgment should be entered for the defendant.

BURR, J. (on petition for rehearing). Defendant petitions for rehearing, alleging: "The court has inadvertently omitted to consider and determine whether the bodily injuries, if any, received by the insured in this action, immediately continuously and wholly disabled the insured from the date of the accident and resulted within thirteen weeks in the loss of life of the insured."

The trial court, in the charge to the jury, carefully defined the terms

"immediately," "continuously," and "wholly disabled," and charged the jury specifically that they must find for the defendant unless the plaintiff showed from the evidence that decedent's injuries caused his death in accordance with the instructions given relative to this clause quoted. The court charged, in effect, it was not sufficient to show the injuries caused the death; but the plaintiff was also required to show these injuries disabled decedent as defined. No exception was taken to any portion of the charge, and on a review of the evidence we cannot say but what there was testimony on which the jury could find for the plaintiff on this feature in the light of the instructions given. Petition for rehearing is denied.

NUESSLE, Ch. J., and CHRISTIANSON and BURKE, JJ., concur.