Marie C. VALENTA, also known as Mrs. Francis Valenta, Plaintiff and Respondent,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, a corporation, Defendant and Appellant.

Civ. No. 8793.

Supreme Court of North Dakota.

March 29, 1972.

Rehearing Denied May 1, 1972.

**394**

Wattam, Vogel, Vogel & Peterson, Fargo, for defendant and appellant.

Conmy, Feste, DeMars & Bossart, Fargo, for plaintiff and respondent.

TEIGEN, Judge.

The defendant (hereinafter insurance company) has appealed from an order denying its motion for judgment notwithstanding the failure of the jury to agree on a verdict.

This is an action brought by the widow, designated and named as the beneficiary of an accident insurance policy insuring F. C. Valenta against accidental bodily injury and death. The issues were tried

and submitted to a jury. At the close of all the testimony the insurance company moved for a directed verdict on the ground that the plaintiff had failed to prove that Mr. Valenta's death resulted from accidental injury, directly and independently of all other causes, and that the evidence established that Mr. Valenta was afflicted with a disease at the time of his death and that this disease caused his death. Counsel for the plaintiff resisted this motion and it was denied. The case was submitted to the jury; however, the jury was unable to agree on a verdict and was discharged.

The insurance company thereupon moved for judgment notwithstanding the disagreement of the jury, under Rule 50(b) of the North Dakota Rules of Civil Procedure, in accordance with its motion for directed verdict. The motion was denied by the trial court and the insurance company has appealed.

■ A motion for judgment notwithstanding the failure of the jury to agree on a verdict calls for a review of the grounds assigned in support of the motion for a directed verdict. Hanson v. Fledderman, 111 N.W.2d 401 (N.D.1961); Leach v. Kelsch, 106 N.W.2d 358 (N.D.1960).

■ The only question for us to review is whether the motion for directed verdict should have been granted had the court not been prohibited from granting the same under Rule 50(a), N.D.R.Civ.P.

■ The scope of review from the court's order denying the motion for judgment notwithstanding the disagreement of the jury is the same as if the motion were one for judgment notwithstanding the verdict, and the motion should not be granted unless the moving party is entitled to judgment on the merits as a matter of law. Bartholomay v. St. Thomas Lumber Company, 148 N.W.2d 278 (N.D.1966); Leach v. Kelsch, *supra*; Olson v. Cass County Electric Co-operative, Inc., 94 N.W.2d 506 (N.D.1959).

■ A motion for judgment notwithstanding the verdict admits the truth of the evidence against the movant and the inferences and conclusions which may reasonably be deduced from such evidence which are favorable to the party opposing the motion. Linington v. McLean County (two cases), 146 N.W.2d 45 (N.D.1966), and 161 N.W.2d 487 (N.D.1968); Lindenberg v. Folson, 138 N.W.2d 573 (N.D. 1965); Larson v. Meyer, 135 N.W.2d 145 (N.D.1965).

■ The motion does not go to the weight of the evidence and the motion should not be granted unless the·moving party is entitled to a judgment as a matter of law. Johnson v. Frelich, 165 N.W.2d 343 (N.D.1969); Pocta v. Kleppe Corporation, 154 N.W.2d 177 (N.D.1967).

It is undisputed that Mr. Valenta, at the time of his death, was an insured under an accident and disability insurance policy which his employer, Schultz and Lindsay Construction Company, purchased from the defendant insurance company. The policy covered certain losses resulting from accidental bodily injuries:

"Subject to all of the Exclusions, Provisions and other terms of this policy, the Company hereby insures the persons described in Schedule I, * * * against loss resulting directly and independently of all other causes from accidental bodily injuries which arise out of the hazards described in Schedule II and are sustained by the Insured during the term of this policy * * *"

Part II of this policy, entitled "EXCLUSIONS", provides, in part:

"This policy does not cover loss caused by or resulting from any one or more of the following:

* * * * * *

"D. Illness, disease, * * *"

The insured Valenta died July 24, 1969, while the policy was in effect. The insur-

ance company refused to pay the plaintiff, as beneficiary under the policy. It specifically denied that Valenta's death resulted "directly and independently of all other causes from accidental bodily injuries" and claimed that his death was caused by a disease, or that the disease contributed to his death.

It appears that Mr. Valenta, who was 51 years of age, on the evening of July 14, 1969, was helping his son carry a water-soaked rug from the basement of the Valenta home which had become flooded with about four inches of water. As they started for the stairway, Mr. Valenta slipped and fell, striking his left side on the concrete basement floor. He complained of severe pain and, after several hours, was taken to the emergency room of the hospital where X rays were taken. The X rays revealed a recent fracture of his left eighth and ninth ribs. He was treated for broken ribs and sent home. The pain continued and, in the early morning hours of July 16, Mrs. Valenta called a doctor. Mr. Valenta was then taken by ambulance to the hospital where he was place in an oxygen tent. He apparently had a great deal of distress from pain in his left chest and had difficulty in breathing. A tracheostomy was performed, which seemed to improve his breathing. However, during the evening of July 16, he suffered a cardiac arrest. His heart was resuscitated. During the night of July 18 he had three additional cardiac arrests but each time his heart was resuscitated by external cardiac massage. He expired at 11:05 a. m. on July 24, 1969, approximately ten days after his fall.

After being hospitalized Mr. Valenta was attended by Dr. Barth. Following Mr. Valenta's death, Dr. Barth requested an autopsy. The autopsy was performed by Dr. Lunseth with Dr. Barth present throughout. Dr. Barth completed the death certificate. He noted on the certificate that the immediate cause of death was an acute myocardial infarction with cardiac arrest, with the onset approximately two weeks prior to death. He listed pneumonia and rib fractures as conditions which gave rise to the immediate cause of death. He also listed arteriosclerotic heart disease as a significant condition contributing to death.

There was considerable medical testimony introduced by both parties.

The medical history of the insured Valenta indicated that when he was eighteen years of age he contracted rheumatic fever. It caused endocarditis, which is explained as being an inflammation of the lining of the heart, which left Mr. Valenta with a heart murmur. He was classified as 4-F during World War II.

In 1962, when Mr. Valenta was forty-four years of age, he consulted with doctors at a medical clinic. He complained of a numbness over the back of his right hand and, when under pressure, felt heart palpitations. X rays taken at that time disclosed a straightening of the left heart border and the possibility that he was suffering from some chronic inflammatory disease. His cholesterol count was 338 as compared to the normal range of 140 to 200. The electrocardiogram was abnormal with the cardiologist noting that the readings suggested he had ischemia, which meant that the heart muscle was receiving an inadequate blood supply. He was placed on a cholesterol-lowering diet, advised to drink no alcohol, and was prescribed medication in the form of a vitamin.

It appears that on the basis of this history and the results of the autopsy there was considerable medical testimony introduced to the effect that Mr. Valenta's pre-existing heart disease was a significant contributing cause and factor of his death, and opinions were expressed that the pre-existing heart disease was the cause of death or an important factor in contributing to his death. However, his attending physician during his last illness, who also assisted in the autopsy after death and who completed and signed the death certificate, testified, in part, as follows:

"Q All right. Now, Dr. Barth, when did Mr. Valenta die?

"A Mr. Valenta died on July 24, 1969, and I pronounced him dead at 11:05 A. M.

"Q Thereafter what arrangements were made for an autopsy examination?

"A On my last note in the chart I wrote pronounced dead at 11:05 A.M. and the coroner was called, Dr. Lawrence.

"Q Excuse me. Why did you call the coroner?

"A I called the coroner because I thought it was an accidental death."

The witness testified that he had an opinion as to the cause of death and was asked to state that opinion:

"Q What is your opinion?

"A My opinion is that this patient, Francis Valenta, died because of an injury and without that injury he may have been alive today.

"Q What injury are you talking about, Dr. Barth?

"A I am talking about the fact that Mr. Valenta slipped on a wet floor and fell and struck his ribs.

"Q I wonder if you would please tell us your opinion of how this accident caused the injuries and his death?

"A I think that he was trying to—I assume, according to his history, he was trying to lift out some wet rugs and slipped and fell and struck his rib cage, fractured ribs, got a pulmonary contusion or bruising of the lung, continued to splint his chest to protect himself from the pain, hypoventilated, didn't breathe enough, developed a secondary pneumonia, hypoxemia, low oxygen, and in this patient who had underlying heart disease he was unable to stand this hypoxemia and because of this he had a heart attack and subsequently cardiac arrests and after that was unconscious and had seiz-

ures and other problems, all of which varied greatly over the next few days and he couldn't survive it. But I feel that without the precipitating and major cause here, namely that of a fall, the fact that he broke his ribs, I just don't think that we could say he would have died. I think that this man would be most likely alive today and maybe ten years from now."

In explanation of the entries contained on the death certificate, he gave the following testimony:

"Q It says 'immediate cause' and then below that it says, below acute myocardial infarction it says, 'due to, or as a consequence of: pneumonia' and then progressing downward it says, 'or a consequence of: rib fracture'. Then over to the left of this in printing it says, 'Conditions, if any, which gave rise to immediate cause, stating the underlying cause last.' Now, do I—what is the underlying cause as it appears on that death certificate?

"A On the death certificate, as I feel, the underlying cause of death was the rib fracture which precipitated the progression of the lines, progression from the rib fracture to the pneumonia to the heart attack with cardiac arrest."

Another doctor, called on behalf of the plaintiff, testified in response to a hypothetical question that he had an opinion as to the cause of death of the insured, Mr. Valenta, as follows:

"A My opinion, on the basis of this hypothetical question, all of the assumptions that have been included, is that the cause of death was the fall that resulted in the fracture, the fractured ribs with the resultant contusion of the lung, pneumonia, the lack or reduction of oxygenation of the blood, were the subsequent events that led to his death.

"Q All right. Dr. Evans, would you please tell the jury and the Court the reasons for your opinion?

"A The reasons for my opinion are that knowing that this man had coronary artery disease or arteriosclerosis of the coronary arteries, that even if he had acute myocardial infarction, a heart attack, either before or at the time of or subsequent to the fall, that he would have survived such a heart attack most likely, statistically, rather than dying of it. That the fall with all these complications that we have enumerated may have very well caused the heart attack and resulted in death."

Two doctors also testified for the defense. Their testimony did not completely agree with the two doctors who testified on behalf of the plaintiff. It may fairly be said that their testimony, in some respects, is in conflict, although a great portion of it is in harmony.

Dr. Story testified for the defense as follows:

"A My opinion is that he died, the immediate cause of death was acute myocardial infarction.

"Q Is this a disease?

"A Yes.

"Q All right. What is the basis for your opinion that he died of acute myocardial infarction? Could you elaborate on your reasons?

"A The autopsy report is sufficiently detailed to make that diagnosis.

"Q You relied then upon the autopsy report and the findings of the pathologist?

"A Yes.

"Q Is that customary in determining the cause of death to so rely on, Doctor?

"A Absolutely.

"Q Is there any more reliable findings that one can go to other than an autopsy report to determine the cause of death in such a case as we have here?

"A Not in my opinion.

"Q Now, the next question then: Did he have a severe coronary heart disease prior to July 14, 1969, the date of his fall and injury, and my question is, do you have an opinion as to whether he had a severe coronary heart disease prior to July 14?

"A Yes, I do.

"Q What is that opinion?

"A That he had a severe coronary disease before this date you mentioned.

"Q That would be the severe coronary heart disease?

"A Yes.

\* \* \* \* \* \*

"Q (Mr. Vogel continuing) All right. Dr. Story, again assuming the truth of the facts and based upon reasonable medical certainty, do you have an opinion as to whether or not this coronary heart disease that you have mentioned this man was afflicted with was a cause of his death?

"A I have an opinion, yes.

"Q What is your opinion?

"A That the coronary heart disease was the cause of his death.

\* \* \* \* \* \*

"Q State whether or not this man's enlarged heart and his atherosclerosis of the coronary arteries, whether or not they were substantial contributing factors to cause his death.

"A I believe they were important factors in contributing to his death."

The doctor who performed the autopsy following Mr. Valenta's death testified, in part, as follows:

"Q (Mr. Hunke continuing) Doctor, do you have an opinion within reasonable medical certainty whether the injuries Mr. Valenta sustained in a fall nine and a half days prior to his death caused his death?

"A Yes.

"Q What is that opinion?

"A I would say that they did not cause his death."

He also testified in explanation of his autopsy findings and concluded that, in his opinion, Mr. Valenta died because his heart had been severely weakened by chronic coronary artery disease in which all three main arteries of his heart were constricted with atherosclerosis, one of which became blocked, causing a massive and fatal myocardial infarction.

The trial court, in a well-reasoned, thorough memorandum opinion in which it reviewed the salient evidence, concluded:

"This evidence, with all its inferences favorable to the plaintiff, lays a credible foundation for the theory that the accidental fall stands out as a predominating factor in causing death."

The insurance policy in question insured the life of Mr. Valenta in the event his death should result "directly and independently of all other causes from accidental bodily injuries" and excluded from coverage death "caused by or resulting from * * * illness, disease * * *"

Similar language has heretofore been considered by this court in Jacobson v. Mutual Ben. Health & Accident Assn., in two cases, one reported in 69 N.D. 632, 289 N.W. 591 (1940) and the other in 70 N.D. 566, 582, 296 N.W. 545, 555 (1941). The court said, in the latter case:

"An injury may be said to be the sole producing cause of death when it stands out as the predominating factor in causing death. The active efficient cause that sets in motion a train of events which bring about a result without the intervention of any force from a new and independent source may be regarded as the direct, proximate and sole cause."

We applied this doctrine in the interpretation of similar language in Grabau v. Hartford Accident & Indemnity Company, 149 N.W.2d 361 (N.D.1967), and we subscribe to it in this case.

It is our conclusion that the evidence introduced in this case, when viewed in the light most favorable to the plaintiff who resisted the motion for judgment notwithstanding the disagreement of the jury, establishes that the defendant would not have been entitled to a directed verdict at the close of the trial. Therefore the trial court did not err in denying the defendant's motion for judgment notwithstanding the failure of the jury to arrive at a verdict, and a new trial must be had.

The order of the district court is affirmed.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.