# SEVERT HALVERSON, Respondent, v. S. A. ZIMMERMAN, Appellant.

(232 N. W. 754.)

114

*Lawrence, Murphy, Fuller & Powers,* for appellant.

Opinion filed October 28, 1930.

*Lemke & Weaver,* for respondent.

116

CHRISTIANSON, J.   Plaintiff brought this action against S. A. Zimmerman and E. B. Crosby to recover damages for alleged malpractice

in the diagnosis and treatment of plaintiff's left shoulder and arm which had been injured in an automobile accident. Upon a former trial the action was dismissed as to the defendant Crosby and a verdict returned against the defendant Zimmerman for $12,000 (Halverson v. Zimmerman, 56 N. D. 607, 609, 218 N. W. 862). This verdict was set aside by the trial court and a new trial ordered on the ground that excessive damages appeared to have been given by the jury under the influence of passion or prejudice. The order granting a new trial was affirmed by this court. 56 N. D. 607, 218 N. W. 862. After remand the case was again tried, and the jury returned a verdict in favor of the plaintiff and against S. A. Zimmerman for $5,000. The defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied and the defendant has appealed from the judgment and from the order denying his said motion.

The facts necessary to an understanding of the questions raised on the appeal are substantially as follows: On May 5, 1925, the plaintiff was injured in an automobile accident in Valley City. He was knocked down and dragged several feet and rendered unconscious. He was picked up and carried to the clinic or hospital of the defendant, Dr. S. A. Zimmerman, where he remained until June 10th, 1925. The defendant testified that upon the plaintiff being brought to the hospital he examined him to ascertain what, if any, bones had been fractured or dislocated and that he gave him such treatment as was necessary at that time; that some two or three days later, and while plaintiff was still delirious or unconscious, he took or caused x-ray photographs to be taken of his arms and shoulders and of his hips. These photographs were identified and received in evidence. The plaintiff testified that shortly before leaving the hospital or clinic (on June 10, 1925) he said to Dr. Zimmerman: "There is no use for me to lay around here any longer, I might as well go home;" and that Dr. Zimmerman replied: "Yes, that is all right but don't try to start work or anything;" that at this time plaintiff's left arm and shoulder were badly swollen and the plaintiff carried his arm in a sling; that while he was in the hospital he told the defendant about his left arm and shoulder aching and that the defendant answered: "Well, it will be a long time, but it will be all right." "It will be a long time before you get over this." After the plaintiff had left the hospital or clinic the arm continued to pain

and trouble him and he was unable to use it. On August 31, 1925, the plaintiff called at the clinic and paid Dr. Zimmerman the bill which he had rendered for $200. At this time plaintiff carried the arm in a sling and although he had a little use of the fingers, he could not raise his arm and it caused him pain whenever he tried to move it. The defendant asked how he (plaintiff) was feeling and the plaintiff answered: "I don't feel any better, my shoulder is aching all the time;" and the defendant replied: "Oh, it will take a long time." The following February or March, to-wit, February, March, 1926, the plaintiff felt a sudden and intense pain in his arm as though someone had struck him; he then called one Dr. McDonald to his home and a couple of days later Dr. McDonald took several x-ray photographs which photographs showed a dislocation of the left shoulder. Shortly thereafter plaintiff consulted Dr. Platou (formerly of Valley City but then practicing at Fargo) and Dr. Platou directed him to go to the Fargo clinic. Plaintiff thereupon went to the Fargo clinic and certain x-ray photographs were taken of the left shoulder, which photographs were admitted in evidence and clearly and unquestionably showed a dislocation of the left shoulder; that is, the x-ray photographs show an empty shoulder socket with the head of the upper arm bone extending below the socket and the front resting on the shoulder blade. Dr. Platou and Dr. Tronnes thereupon performed an operation. According to their testimony they found a condition indicating that the bones had been out of joint for a long time. Certain fibrous tissue, denominated by one of the doctors as "sole leather tissue," had formed. The tissue had to be cut with a knife. The shoulder was re-set by Drs. Platou and Tronnes, but, according to the undisputed evidence, plaintiff does not have anything like the full use of it. There is evidence to the effect that plaintiff has developed rheumatism, and some of the medical testimony is to the effect that rheumatism probably interferes to some extent with the use of the arm.

On cross-examination the plaintiff stated that during the period intervening the time he left Dr. Zimmerman's clinic and the time Dr. McDonald was called, the left arm and shoulder caused plaintiff almost constant pain and that he could feel a break or something loose when he moved the arm.

There is a square conflict in the evidence as regards the condition

of plaintiff's left shoulder at the time he was in Doctor Zimmerman's clinic or hospital and was being treated by him. The defendant Zimmerman claims that the left arm and shoulder showed no injuries but that the plaintiff had the full use thereof during the time that he was in the clinic but that his head, right arm and hand were lacerated and bruised and were treated by defendant. The x-ray photographs which, according to defendant's testimony, had been taken shortly after the plaintiff was brought to the clinic, show no dislocation of either the left or right shoulder. The testimony of the defendant was corroborated by Dr. Crosby, who assisted him, and also by some of the nurses. This testimony, however, is flatly contradicted by the plaintiff and by other witnesses who testified in his behalf. In the circumstances it is apparent that the case is one where it was peculiarly a question for the jury to determine where the truth lay and their findings in that respect. are binding on this court. In fact appellant's counsel concedes that according to plaintiff's evidence it is established that the defendant was negligent in failing to discover the dislocation of the left shoulder and re-setting the same. But he contends that notwithstanding the evidence on the part of the plaintiff being sufficient to establish these facts that the evidence fails to establish that the present condition of plaintiff's left arm and shoulder, or the condition that existed there subsequent to August 31, 1925, was due to defendant's negligence; that on the contrary such condition is due to the negligence of the plaintiff himself in failing to have the injury treated or the fracture or dislocation properly attended to by other competent physicians. In short, defendant contends: (1) That the plaintiff was guilty of contributory negligence and hence is not entitled to recover at all; (2) that even though plaintiff cannot be said to be guilty of contributory negligence barring his right of recovery the amount of damages should be restricted to that brought about by the defendant's negligence; that the jury should have been required to apportion the damages so as to award plaintiff recovery only for such portion of his injury as were approximately caused by the negligence of the defendant and deny him damages for such injury as were approximately caused by plaintiff's own negligence; and that no damages should be awarded to plaintiff for any aggravation of plaintiff's injury sustained after he became aware that his shoulder was fractured or dislocated; and (3) that upon plaintiff's

becoming aware that he was not receiving proper medical treatment from defendant it was his duty to obtain proper treatment elsewhere, and thus minimize the damages occasioned by any negligence that the defendant might have been guilty of. These contentions of the defendant are predicated upon the testimony of the plaintiff, on cross examination, to the effect that his left arm and shoulder continued to pain him constantly after he left the defendant's clinic; that he felt something loose or broken in the shoulder; that he could hear a peculiar "clicking" sound when he moved the arm. The defendant brought the foregoing contentions to the attention of the trial court by means of a motion for a directed verdict, by requests for instructions (which were refused), and by motion for judgment notwithstanding the verdict or for a new trial. They are presented on this appeal by assignments of error predicated upon the denial of the motion for a directed verdict, the refusal to give the requested instructions, and the denial of the motion for a directed verdict or for a new trial.

An action to recover damages for malpractice is grounded in negligence and, hence (as the trial court instructed the jury in this case), it involves, and the plaintiff in order to prevail must establish: (1) the existence of a duty on the part of defendant toward the plaintiff to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury resulting to the plaintiff as to the proximate cause of such failure on the part of defendant. 45 C. J. p. 632.

The term "negligence" is a relative one "and its application depends on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose." Cooley, Torts, 3d ed. p. 1324. In a legal sense negligence is "the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand whereby such other person suffers injury." Cooley, Torts, 3d ed. pp. 1324, 1325; 45 C. J. 631. The respective obligations and duties of a physician and a patient are, of course, controlled by the peculiar relation between them.

"The foundation of the relation is laid on the theory that a physician is one experienced and skilled in those subjects about which the ordinary layman knows next to nothing and in which he has most interest, subjects relating to his health and the health of his family. The ignorant

and ailing layman ordinarily relies implicitly on the word of the physician and follows professional advice in detail." 21 R. C. L. p. 375.

"On engaging a physician to treat his case a patient impliedly engages him to attend throughout that illness, or until his services are dispensed with. The patient places himself in the hands of the physician and thereafter relies on the judgment and knowledge of the physician rather than on his own. A part of the correct treatment of the case is the careful and proper determination by the physician of the moment when the relation shall end. When the physician takes charge of a case and is employed to attend a patient, his employment, as well as the relation of physician and patient, continues until ended by the consent of the parties or revoked by the dismissal of the physician, or until his services are no longer needed. For example, when a surgeon performs an operation, not only must he use reasonable and ordinary care and skill in its performance, but also in the subsequent treatment of the case. It is his duty to give the patient such attention after the operation as the necessity of the case demands, in the absence of any special agreement limiting the service or reasonable notice to the patient. It would seem that even before it is safe to discontinue medical treatment the relation of physician and patient may be terminated by a dismissal of the physician, or by an agreement between the two to end the relation, or by the withdrawal of the physician after proper notice." 21 R. C. L. pp. 389, 390.

The general rules with respect to the effect of contributory negligence on the right to recover damages for personal injuries apply in malpractice suits. If in an action to recover damages for malpractice it is shown that the injuries for which recovery is sought resulted from negligence on part of the patient either alone, or simultaneously and in co-operation with the alleged negligence on the part of the physician, then the plaintiff has no right to recover damages from the defendant; and where a physician has been guilty of negligence causing injury to the patient and the patient subsequently, by his own want of care, aggravates the injury primarily sustained at the hands of the physician, the physician will be liable only for the injury approximately resulting from his own negligence and not for the aggravation caused by the negligence of the patient. 48 C. J. p. 1135; Taylor, Relation to Physicians, pp. 355–365.

Ruling Case Law (21 R. C. L. pp. 402, 403) summarizes the rules deduced from the decisions as follows:

"When the relation of physician and patient has been once created, the patient is owed a duty of due care not only by the physician but also by himself. That is, it seems clear that he should be allowed to base no right of action on an injury to which his own negligence has materially contributed, and the fact that the plaintiff declares in contract will not preclude the defense. To constitute a bar to the suit the negligence of the patient must have been an active and efficient contributing cause of the injury. In other words contributory negligence to defeat right of action must be simultaneous and co-operating with the fault of the defendant, must have entered into the creation of the cause of action, and have been an element in the transaction which constituted it. Where the fault of the patient was subsequent to the fault of the physician and merely aggravated the injury inflicted by the physician, it only affects the amount of the damages recoverable by the patient. As a part of the exercise of due care it is the duty of the patient to submit to the treatment prescribed by his physician, and follow the directions given by him. Where an injured person disobeys the directions of his physician, and thereby enhances or aggravates the injury, the rule seems to be universal that such disobedience will prevent a recovery to the extent that the damages were thereby enhanced or increased. Of course, a patient is justified in disregarding instructions which are improper and would subject him to needless danger of health or life. However, the mere fact of discharging a physician or quitting his care and employing another physician by a patient who believes he has been injured by the negligence of the former physician is not in itself evidence of contributory negligence. Since the patient may rely on the directions of his physician, it must follow that he incurs no liability by doing so. Thus, a person injured by the negligence of another is bound to use ordinary care to effect his restoration or cure, and he is not responsible for a mistake, and, when he acts in good faith under the direction of the physician, the mistake of the latter in the treatment will not shield the wrongdoer. If a patient is fully cognizant of the nature of the specific treatment that he is about to get, or if he actually directs a specific act, such as an operation, which should not be performed, it would seem that he could not properly

complain later that such treatment or act constituted malpractice for which he should recover. Here it would seem that he has sought to rely on his own judgment rather than that of the physician and can complain only if the physician negligently performed the act or treatment that the patient ordered; but authority exists which seems to adopt a contrary view. The rule as to the burden of proving negligence of the patient seems to follow the rule as to the burden of proof in respect to contributory negligence in its more technical sense." 21 R. C. L. pp. 402, 403.

The evidence in this case in our opinion fails to furnish any basis whatever for the claim on the part of the defendant that plaintiff's right of recovery is barred by reason of his contributory negligence. By no possible construction of the evidence can it be found that there was any negligence on the part of the plaintiff simultaneously and co-operating with the alleged fault of the defendant. For some five weeks after the accident occurred plaintiff was under the direct care and supervision of the defendant. The primary and basic negligence charged against the defendant is claimed to have occurred at this time, and to have consisted in his failing to properly diagnose and treat the injury. There is not the slightest dispute in the evidence but that during all of this time the defendant was in supreme command and that every direction given by him was scrupulously carried out.

Nor do we believe that the evidence in this case furnishes any basis for the claim that the plaintiff was negligent in not seeking medical assistance elsewhere. As said, it is undisputed that for a period of five weeks after the accident the plaintiff was under the direct supervision and care of the defendant in the hospital operated by him. It is likewise undisputed that when the plaintiff left the hospital he did so with the express consent of the defendant. There is no claim that a single direction given by the defendant was violated, either by commission or omission, on the part of the plaintiff. According to plaintiff's testimony his left arm and shoulder caused him constant pain during the time that he was in the hospital or clinic. It was badly swollen when he left the hospital, with the defendant's consent and approval. He was then informed by the defendant that it would take a long time for the injury to heal but that eventually he would be all right. According to plaintiff's testimony the condition of the arm

continued about the same after he left the hospital. There was no aggravation. Whatever difficulty plaintiff had in moving his arm and whatever pain was incident thereto remained about as before, except, as plaintiff said, at times he thought he was getting better. It is undisputed that on August 31, 1925, the plaintiff called at the clinic and paid the bill which had been rendered by the defendant for the treatment; and according to plaintiff's testimony at this time he was still carrying the left arm in a sling, and in response to an inquiry by the defendant as to how he was getting along, he (plaintiff) answered that the arm and shoulder were still hurting and the defendant again said that it would take a long time. The action of the plaintiff in calling at the clinic and paying the bill indicates that he still had confidence in the defendant and supposed that the treatment he had received up to that time was proper and that he was legally obligated to pay for it. The plaintiff never questioned the course of treatment; he disobeyed no instructions given by the defendant; he accepted at par the parting injunction that it would take a long time for him to get well but that eventually he would be all right, until in February or March, 1926, when he had a sudden, violent pain in the arm and called Dr. McDonald to treat it. Then for the first time plaintiff obtained from an authoritative medical source information as to the actual condition of his shoulder; and there is no contention but that very shortly thereafter he sought competent medical aid with the object in view of having the injury properly attended to. Appellant's counsel lays great stress on the fact that plaintiff on cross-examination testified that he knew something was broken in his shoulder, that he heard something "click," and that he knew that the defendant was not "doing anything" for him. Of course plaintiff knew that something was broken. The condition of his arm during the time he was in the clinic and when he left was such as to indicate that serious injury had been sustained. This was recognized by the defendant who assured him that it would take a long time for the injury to heal. There is no claim and no evidence that plaintiff had any knowledge as to the proper mode of treatment of injuries of this nature. He was engaged in the ice business and was not a physician or surgeon. There is nothing to indicate that he supposed that he was being improperly treated or that any further medical assistance was necessary. On the contrary, his evidence is perfectly con-

sistent with the fact that he supposed that the treatment he had received from the defendant was proper and all that was required, and that only time was needed to heal the injury.

It is not a part of the duties of a patient to distrust his physician, or to set his judgment against that of the expert whom he has employed to treat him, or to appeal to other physicians to ascertain if the physician is performing his duty properly. The very relation assumes trust and confidence on the part of the patient in the capacity and skill of the physician; and it would indeed require an unusual state of facts to render a person who is possessed of no medical skill guilty of contributory negligence because he accepts the word of his physician and trusts in the efficacy of the treatment prescribed by him. A patient has the right to rely on the professional skill of his physician, without calling others in to determine whether he really possesses such skill or not. The patient is not bound to call in other physicians, unless he becomes fully aware that the physician has not been, and is not, giving proper treatment. Schoonover v. Holden (Iowa) 87 N. W. 737; 48 C. J. p. 1135.

The situation disclosed by the evidence in this case is quite different from that disclosed in the various cases cited by the appellant. In those cases there was either a deliberate disregard or violation of the physician's directions on the part of the patient; or failure to obtain proper treatment after the patient had been advised by other competent physicians that he was in need of such treatment. No such condition is shown to exist in this case. We are agreed that upon the record presented here the trial court was correct in denying defendant's motion for a directed verdict and in refusing to give the requested instructions. In its charge to the jury the trial court, however, instructed as follows:

"Even though you find from the evidence that the defendant physician was at fault and liable to the plaintiff for any damage under all the instructions of the court, you are further instructed that the defendant is not responsible to the plaintiff in this action for any injury or aggravation of injury which you might find under the evidence that plaintiff may have brought upon himself by want of ordinary care, or his failure to do what an ordinarily prudent person under like cir-

cumstances would do to avoid injury, aggravation of injury, suffering, loss or damage."

In view of the absence of any substantial evidence tending to show contributory negligence on the part of the plaintiff, this instruction was error against the plaintiff rather than against the defendant.

Appellant, also, contends that excessive damages were awarded as a result of passion and prejudice on the part of the jury and that consequently a new trial should be ordered or the amount of the verdict reduced. In support of this contention appellant asserts that the relation of patient and physician existing between the plaintiff and the defendant terminated or was abandoned June 10, 1925; also, that there is evidence to the effect that plaintiff consulted another physician some six or eight weeks after he was discharged from defendant's hospital and that consequently the defendant would in no event be liable for injuries sustained by plaintiff after July 24, 1925, and that prior to that date damages had not been sustained in the amount of the verdict. The contention that there is evidence tending to show that plaintiff consulted a doctor in July, 1925 rests upon certain answers given by the plaintiff's son in the course of his testimony wherein he stated that Dr. McDonald came to their home a month or six weeks after his father came home from the hospital. The answers in question were elicited on cross-examination. The testimony of the witness shows that he was away from home during the greater part of the summer and saw his father only two or three times. On re-direct examination he stated that he did not remember the dates "for sure" and might be mistaken. He further testified that his father went to Fargo for treatment about a month or six weeks after Dr. McDonald had been called to see him.

We have no hesitancy in holding that when the evidence in this case is considered as a whole, reasonable men, in the exercise of reason and judgment, could not possibly come to the conclusion that Dr. McDonald was called to treat the plaintiff in July, 1925 or at any time prior to February or March, 1926. The claim that the relation of patient and physician terminated June 10, 1925, upon plaintiff being discharged from the hospital is fully answered by what has been said above as regards the respective duties and obligations of physician and patient.

The evidence in this case shows that the plaintiff expended in all some $3,200 for medical treatment, inclusive of hospital charges. It also shows that he has been prevented from performing any labor; that he has suffered a great deal of pain, and that the injury to his arm is permanent. In the circumstances of this case a verdict for $5,000 does not appear to be excessive.

It is next contended that the trial court erred in permitting certain witnesses to testify as regards plaintiff's behavior and appearance after his discharge from the hospital or clinic. Plaintiff's wife and certain neighbors and acquaintances testified that they observed plaintiff carrying his left arm in a sling when, and after, he came home from the hospital. They, also, testified as to certain conduct and declarations on his part indicative of the fact that the arm and shoulder were causing him pain. No error was committed in admitting this evidence. There was no attempt to prove a narration by the plaintiff of a past transaction. The evidence merely related to the acts and declarations of the plaintiff indicative of the condition of his left arm and shoulder and the pain he was at that time undergoing. This evidence was admissible under well settled rules. Bennett v. Northern P. R. Co. 2 N. D. 112, 13 L.R.A. 233, 49 N. W. 408; Puls v. Grand Lodge, A. O. U. W. 13 N. D. 559, 102 N. W. 165; 3 Jones, Commentaries on Ev. 2d ed. p. 226, § 1213; 8 Enc. Ev. pp. 572, et seq.

The trial court was correct in denying the motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

BURKE, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.