[File No. 6684.]

CLARA JACOBSON, Respondent, v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, a Corporation, Appellant.

(296 N. W. 545.)

Opinion filed February 8, 1941.   Rehearing denied March 3, 1941.

*Zuger & Zuger* and *Hyland & Foster,* for appellant.

*Murray & Murray,* for respondent.

CHRISTIANSON, J. This is an action by the beneficiary named in an accident insurance policy issued by the defendant to recover for the death of the person whose life was insured by such policy. The case has been twice tried to a jury. On each trial a verdict was returned for the plaintiff. The judgment rendered pursuant to the verdict returned on the first trial was reversed by this court and the case remanded for a new trial. Jacobson v. Mutual Ben. Health & Acci. Asso. 69 N. D. 632, 289 N. W. 591. After remand, the case was again tried to a jury and resulted in a verdict in favor of the plaintiff for $2,000. The court made an order directing judgment to be entered in favor of the plaintiff and against the defendant for $2,000, together with interest thereon, and for costs and disbursements. Judgment was entered in accordance with such order for judgment. Thereafter, the defendant moved in the alternative for judgment notwithstanding the verdict, or for a new trial. The defendant, also, moved that the judgment theretofore entered be modified by deducting therefrom the amount allowed for interest. Both motions were denied, and the defendant has appealed from the judgment and from both orders.

On the former appeal many questions relating to the construction of the terms of the policy were considered and decided. The decision on the former appeal became, and is, the law of the case and the questions then determined are not subject to review on this appeal. 4 C. J. 1213 et seq.

The policy in suit was issued on January 28th, 1928, to Henry J. Jacobson as insured, and named the plaintiff Clara Jacobson, the wife of the insured, as beneficiary. The policy provided:

"MUTUAL BENEFIT
HEALTH and ACCIDENT
ASSOCIATION
OMAHA
"(Herein called Association)
"Does Hereby Insure

"Insuring Clause: Henry J. Jacobson (Herein called the Insured) of City of Wing, State of North Dakota, against loss of life, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time on account of disease contracted during the term of this Policy, respectively, subject, however, to all the provisions and limitations hereinafter contained.

"ACCIDENT INDEMNITIES
SPECIFIC LOSSES

"PART A.

"If the Insured shall, through accidental means, sustain bodily injuries as described in the Insuring Clause, which shall, independently and exclusively of disease and all other causes, immediately, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay:

"For Loss of Life ...................... $2,000.00
For Loss of Both Eyes .................. 2,000.00
For Loss of Both Hands ................ 2,000.00
For Loss of Both Feet .................. 2,000.00
For Loss of One Hand and One Foot ...... 2,000.00
For Loss of Either Hand .............. 700.00
For Loss of Either Foot ............... 700.00
For Loss of Either Eye ................ 500.00

"Loss in every case referred to in the above schedule for dismemberment of hands and feet shall mean severance at or above the wrist or above the ankle joint, respectively, and the loss of eye or eyes shall

mean the total and irrecoverable loss of entire sight thereof. Only one of the amounts named in this part will be paid for injuries resulting from one accident, and shall be in lieu of all other indemnity."

The insured died on August 16th, 1938. It is the claim of the plaintiff that the death resulted "directly and independently of all other causes from bodily injuries" sustained by the insured "through purely accidental means" on July 23d, 1938.

"On July 23, 1938 the insured was fifty years of age and in good physical condition, strong, robust, and active. He was an employee of the Patterson Land Company and on that day undertook to load a wild horse into a truck. Sometime immediately prior to this time others had made the attempt and failed. The horse was rounded into a barn, roped, and a war bridle put on. The insured worked and struggled with the horse for a period of about two hours, during which time the horse dragged the insured around. During the struggle with the horse he was not knocked down nor kicked, nor did he receive any injuries to the body that were noticeable from inspection, nor was any internal injury shown. Eventually he succeeded in getting the horse onto a truck.

"The exertion was so strenuous that the insured was completely exhausted at the end of the struggle, complained of being tired, and when he went home complained of being sick and went to bed." 69 N. D. 635, 636, 289 N. W. 592.

The insured had no supper that evening, and he complained of pain in the region of the heart and in his left arm. He was nauseated and troubled with shortness of breath and sleeplessness. He remained in bed the next day. There is evidence to the effect that the insured did some work subsequent to July 23d, 1938. He drove around to some farms belonging to his employer and attended to some matters there. Certain written reports were offered in evidence signed by the insured reciting such activities. There is also evidence that on August 2d some grain in a certain granary belonging to his employer, situated in the town where the insured lived, was cleaned out and that the insured was present and "shoveled to some extent." There is evidence on the part of the plaintiff that the insured was a sick man from the time he came home on July 23d until the time of his death; that the illness which he had in the evening of July 23d and following days persisted; that

he was unable to work as before, and in fact did little or no work; that when he went to inspect the farms for his employer, he was frequently, if not generally, accompanied by his son who drove the car, and the son testified that he performed the work which the reports submitted to the employer recited that the insured had performed.

A boy who was present at the time the insured tussled with the horse, testified that the horse dragged him (the insured) around and that he skidded along the ground, and that the insured "was all exhausted and said he was exhausted, all tired out."

On August 14th a physician was called, and he found the insured in bed with a high fever. He diagnosed the ailment as influenza, and upon a later examination discovered that he was suffering from coronary thrombosis—"a blood clot forming in one of the main blood vessels that supplies the heart muscles." The insured died on August 16th and the physician who had attend him certified that the death "was due to coronary thrombosis and influenza." This physician testified upon the first trial. He did not testify in person on the second trial, but a transcript of his testimony upon the former trial was read in evidence. An extended summarization of such testimony is set forth in the opinion on the former appeal (69 N. D. 636, 637, 289 N. W. 593), and hence, as the testimony of the doctor given upon both trials is identical, the summarization set forth in the opinion on the former appeal will not be repeated here. While, as set forth in the former opinion, the doctor testified that he could not state whether the coronary thrombosis was caused by the influenza or by the overexertion of the insured in the tussle with the horse, he did testify that the condition of coronary thrombus could not have existed prior to, or at the time, the tussle with the horse commenced; he further testified that, it was his opinion, based upon his examination and treatment of the insured, that the probable cause of the death of the insured was the injury which he sustained in tussling with the horse. He said: "His death as I stated in the death certificate was due to coronary thrombosis and influenza, but it is my opinion that those conditions were in all probability brought about by this injury or his tussle with the horse of which we have the history here."

In the decision on the former appeal it was held that injuries to the heart caused by the struggle with the horse while endeavoring to

load it would constitute a bodily injury within the meaning of the policy, even though there were no wounds or bruises upon the body resulting from such struggle. But it was further held that the evidence did not show that such bodily injury caused the death of the insured, "independently and exclusively of disease and all other causes."

In its brief on this appeal, appellant says there are three questions for this court to decide: First, whether there is any competent evidence to sustain the verdict; second, whether the court erred in admitting certain evidence, and if so whether such error was prejudicial; and, third, whether the trial court erred in refusing to amend the judgment by striking out an allowance of interest. These questions will be considered in the order stated.

Appellant contends that there is no competent evidence from which the jury could find:

1. That the insured, Henry J. Jacobson, sustained any bodily injuries through purely accidental means in the struggle with the horse on July 23, 1938; or

2. That such bodily injuries, if any were sustained, independently and exclusively of disease and all other causes, immediately, continuously, and wholly disabled the insured from the date of the accident; or

3. That such injuries, if any were sustained, resulted in the death of the insured.

1. On the former appeal we held that there was evidence sufficient to sustain a finding that the insured sustained bodily injuries through accidental means at the time, and in the course, of loading the horse. There was stronger evidence upon the second trial in support of such finding. We are all agreed that under the rules laid down in the decision on the former appeal there was ample evidence to justify the jury in finding that the insured did sustain bodily injuries through purely accidental means in the course of his struggle with the horse on July 23, 1938.

2. Appellant further contends that even though there were competent evidence tending to show that the insured sustained bodily injuries through purely accidental means in the struggle with the horse on July 23, 1938, that nevertheless there is no competent evidence showing that such injuries immediately, continuously, and wholly dis-

abled the insured from the date of the accident. The evidence, says the appellant, tends rather to show that the insured did not become "immediately, continuously, and wholly" disabled from the date of the accident. The appellant adduced certain evidence tending to show that on August 2, 1938, the insured assisted in cleaning out a granary and shoveled some grain, and that after July 23, 1938, he made certain trips to farms owned and operated by his employer. The defendant, also, offered in evidence certain statements signed by the insured reporting to his employer concerning matters and activities incident to operations on farms owned by such employer, and which farms, according to the reports, had been visited by the insured. As a whole this evidence is the same as it was upon the former trial, with some exceptions presently to be noted. On the former trial a son of the insured testified that on the trips to the farms referred to in the reports, he (the son of the insured) drove the car, and that generally the work that the reports showed that the insured had performed, was actually performed by the son of the insured. Since the former trial, the son has moved to the Pacific Coast. He did not appear as a witness upon the second trial, but a transcript of the testimony he gave upon the former trial was read in evidence. The defendant introduced certain evidence, not offered upon the former trial, tending to contradict and impeach the testimony of the son of the insured. The testimony so introduced by the defendant tended to show that during the time the son testified that he had driven his father's car he (the son) had received pay as a foreman on a certain Works Progress Administration project. On the other hand, the testimony of the plaintiff upon the second trial tended to show with more force and detail the condition of the insured, both before and after the accident, than did her testimony upon the former trial. The testimony upon the second trial showed in rather a graphic manner the health and vigor of the insured before the accident, and his disability after the accident. Plaintiff testified that the insured prior to the accident was in excellent health, and had never been sick; that when he came home in the evening of July 23d he complained of pain in the region of the heart, was troubled with nausea and shortness of breath; and that this condition continued to the time of his death.

The contention of the appellant that the evidence, construed in the

light most favorable to the plaintiff, fails to show that bodily injuries sustained by the insured through purely accidental means on July 23d, 1938, did "immediately, continuously, and wholly disable the insured from the date of the accident" necessarily involves a consideration of the meaning of these words in the policy. Provisions that the insurer shall be liable only for such accidental injuries as shall "immediately, continuously, and wholly" disable the insured are frequently found in accident policies( 1 C. J. p. 468), and the question has been raised in many cases as to the meaning to be given to these words. In a majority of the cases it has been held that "the word 'immediately' in the connection mentioned is used as an adverb of time, although in some cases it has been interpreted as signifying causation and not time." The principal difficulty in these cases has not been to ascertain whether the word "immediately" signifies proximity of time, but rather to determine how soon after the infliction of the injury the disability must result in order to come within the designation. The authorities are generally agreed, however, that "immediately" as so used does not mean instantaneously. 1 C. J. 468. Some courts have held that the disability must result presently and without any substantial interval. Other courts have held that "in view of the purpose of the limitation which is to guard against the difficulty of determining whether or not the disability in any case was the result of the accident or some intervening cause, that a disability is immediate when it results within the time required by the laws of nature for the cause to produce the effect." 1 C. J. p. 468; 29 Am. Jur., Insurance, p. 880; 6 Cooley, Briefs on Insurance, 2d ed. 5269; 7 Couch, Insurance, 5786; United Commercial Travelers v. Barnes, 72 Kan. 293, 80 P. 1020, 82 P. 1099, 7 Ann. Cas. 809; Thomas v. Mutual Ben. Health & Acci. Asso. 136 Kan. 802, 18 P. (2d) 151; Frenzer v. Mutual Ben. Health & Acci. Asso. 27 Cal. App. (2d) 406, 81 P. (2d) 197. (The two cases last cited involved accident policies issued by the defendant in this case, containing provisions identical with the one under consideration here.)

It is not necessary for us to determine in this case which of the meaning attributed to the word "immediately" by the various courts in cases where such meaning has been drawn in question in suits on accident insurance policies is the correct one, for, if plaintiff's testimony be true, the insured became disabled immediately on the date of the acci-

dent within any meaning of that term. According to her testimony, the insured was disabled when he came home on the day on which the accident occurred.

The authorities also differ as to the meaning of the terms "wholly" and "continuously" in a policy of accident insurance, whereby the insurance company agrees to indemnify the insured against loss occasioned by accident *wholly and continuously* disabling him from the date of the accident. Generally speaking, the cases seem to be divided into two classes, viz.: those which construe these terms "liberally in favor of the insured, and those which construe them strictly against him." Lobdill v. Laboring Men's Mut. Aid Asso. 69 Minn. 14, 71 N. W. 696, 38 L.R.A. 537, 65 Am. St. Rep. 542. See also Hurley v. Bankers' Life Co. 198 Iowa 1129, 199 N. W. 343, 37 A.L.R. 146.

It is recognized that the principal object of a stipulation in an accident policy requiring payment for total disability is to indemnify the insured against loss resulting from inability to work (6 Cooley, Briefs on Insurance, 2d ed pp. 5536, 5537; Bachman v. Travelers Ins. Co. 78 N. H. 100, 97 A. 223; United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462); and the great weight of authority is to the effect that the terms "wholly disabled" or "totally disabled" in an accident insurance policy do not mean a state of complete physical and mental incapacity, or utter helplessness, as a strict, literal construction of such terms might imply; but mean rather inability to do all the substantial and material acts necessary to carry on the insured's business or occupation, or any business or occupation, in a customary and usual manner, and which acts the insured would be able to perform in such manner, but for such disability. United Commercial Travelers v. Barnes, 72 Kan. 293, 80 P. 1020, 82 P. 1099, 7 Ann. Cas. 809, and authorities cited in note in 7 Ann. Cas. pp. 815 et seq.; Lobdill v. Laboring Men's Mut. Aid Asso. 69 Minn. 14, 71 N. W. 696, 38 L.R.A. 537, 65 Am. St. Rep. 542, supra; Rathbun v. Globe Indem. Co. 107 Neb. 18, 184 N. W. 903, 24 A.L.R. 191, and notes in 24 A.L.R. pp. 203 et seq., and 98 A.L.R. pp. 789 et seq.; 29 Am. Jur., Insurance, 872 et seq.; Hohn v. Inter State Casualty Co. 115 Mich. 79, 72 N. W. 1105; Fitzgerald v. Globe Indem. Co. 84 Cal. App. 689, 258 P. 458; Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N..W. 737; 6 Cooley, Briefs

on Insurance, 2d ed. pp. 5536, 5548; 14 R. C. L. pp. 1315, 1316; May, Insurance, § 522; Monahan v. Supreme Lodge, O. C. K. 88 Minn. 224, 92 N. W. 972; 2 Bacon, Life & Accident Insurance, §§ 554, 555; Missouri State L. Ins. Co. v. Case, 189 Ark. 223, 71 S. W. (2d) 199.

If the policy is of the "occupational" type and undertakes to insure against disability to transact a certain business or to perform labor in a particular occupation in which the insured is engaged, the insured is "wholly disabled" within the meaning of the policy if the infirmity resulting from the accidental injury is such as to render the insured unable to do all the substantial and material acts necessary to the prosecution of the insured's business, or in the carrying on of his occupation, and which acts he would be able to do and perform were it not for the disability. Notes in 98 A.L.R. p. 789, and 7 Ann. Cas. 815.

If the policy is of the "general" type and undertakes to insure against loss only in case the insured shall become "wholly disabled" or "totally disabled," and there are no words limiting the disability to a particular business or occupation, the insured becomes "wholly" or "totally" disabled, within the meaning of the policy, if the infirmity occasioned by the accident in fact renders the insured unable to carry on any business, or remunerative vocation, which business or vocation the insured would be qualified, physically and mentally, to carry on if it were not for such infirmity. Note in 98 A.L.R. p. 800; Missouri State L. Ins. Co. v. Case, 189 Ark. 227, 71 S. W. (2d) 202.

In Lobdill v. Laboring Men's Mut. Aid Asso. supra, the supreme court of Minnesota had occasion to consider the meaning of a provision in an accident insurance contract whereby the insurance company agreed to indemnify the insured against loss "resulting from bodily injuries effected through means aforesaid (external, violent, and accidental) wholly and continuously disabling said member from transacting any and every kind of business pertaining to the occupation above stated." 69 Minn. 14, 71 N. W. 696, 38 L.R.A. 537, 65 Am. St. Rep. 542. The holding of the Court as to the meaning of the term "wholly disabled" is epitomized in 8 Words & Phrases, p. 7453, as follows: " 'Total disability' or 'wholly disabled,' as used in an accident insur-

ance policy, does not mean absolute physical inability to transact any kind of business pertaining to the occupation of merchant. It is sufficient if his injuries were such that common care and prudence required him to desist from transacting any such business in order to effectuate a cure. Inability to transact some kinds or branches of business pertaining to his occupation as merchant would not constitute total disability, provided he was able to transact other kinds or branches of business pertaining to such occupation; but ability to occasionally perform some trivial or unimportant act connected with some kind of business pertaining to such occupation would not render his disability partial, instead of total, provided he was unable to substantially or to some material extent transact any kind of business pertaining to such occupation. The fact that he occasionally performed some act connected with his business as a merchant would not necessarily prove that he was not totally disabled within the meaning of the policy. The frequency and nature of these acts will ordinarily be for the consideration of the jury in determining whether he was totally disabled as above defined."

Where an accident policy includes the element of continuity and undertakes to insure only for loss resulting from bodily injuries that "wholly and continuously" disable the insured, the word "continuously" means regularly, protracted, enduring, and without any substantial interruption of sequence, as contradistinguished from irregularly, spasmodically, intermittently or occasionally. *Continuously* does not necessarily mean constantly (Bodfish v. Bodfish, 105 Mass. 317, 319); nor does it denote ceaseless and absolute continuity. United States v. Fitzpatrick (C. C. A. 10th) 62 F. (2d) 562, 564; Eppenstein v. Ogden R. Adams & Co. 224 App. Div. 332, 230 N. Y. S. 714; H. F. Wilcox Oil & Gas Co. v. Lewis, 173 Okla. 640, 49 P. (2d) 782; 7 Couch, Insurance, p. 5789; Clark v. Pacific Mut. L. Ins. Co. 185 Ill. App. 580, 581. In considering the meaning of the word "continues" in the clause: "if the temporary total disability continues," in a workmen's compensation law, the Appellate Division of the supreme court in New York, in the decision in Eppenstein v. Ogden R. Adams & Co. 224 App. Div. 332, 230 N. Y. S. 714, supra, said:

"The contention of the appellants therefore must be that, in order to warrant compensation, the effects of the injury must be continuous

to the exclusion of any interruption, no matter for how short a time, so the break be substantial. If such was the purpose of the lawmakers, then being *able* one day subsequent to the injury destroys the continuance of the disability. This does not seem to me to have been the intention of the legislature. To continue means to keep on. Century Dictionary. Wherever there are interrupted consequences of a cause, the cause is continuing, and, if the cause continues and it produces the same result, it ought to be permissible to claim that any result from the cause also continues.

" 'A continuing offense is a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force.' 2 Words and Phrases, p. 1510; Wharton, Criminal Pleading, 8th ed. 474; Bibb v. State, 83 Ala. 84, 3 So. 711.

"The Vice Chancellor, in Wood v Sutcliffe, 8 Eng. L. & Eq. Rep. 220, says:

" 'I have used the term "continuous injury." By "continuous" I do not mean never ceasing, but of recurring at repeated intervals so as to be of repeated occurrence, . . . as an actual continuous mischief would be.' "

In Couch on Insurance, it is said: "Where the limitation of liability is to a continuous period of disability, the continuity of the disability is not broken by the fact that the insured endeavored to return to work, if he was unable to perform any substantial part of his ordinary duties and was soon compelled to desist entirely, since he should not be penalized for having honestly endeavored to work, when, within the sense of his insurance contract, he should not have done so. In other words, an insured, by attempting to return to work when he in fact was unable to perform his usual and ordinary duties, should not be held to have acted at the peril of losing insurance to which he would have been entitled had he remained contentedly idle." 7 Couch, Insurance, p. 5789.

In this case it cannot be said as a matter of law that the insured was not "immediately, continuously, and wholly" disabled from the date of the accident by injuries which he sustained in the struggle with the horse on July 23, 1938. There is substantial evidence tending to establish that the insured was so disabled. Whether the insured sustained the injuries and whether such injuries independently and ex-

clusively of disease and all other causes, immediately, continuously, and wholly disabled the insured from the date of the accident, were, under the evidence in this case, questions for the jury.

3. Appellant further contends that in any event there was no competent evidence from which the jury could find that any injuries the insured sustained in the struggle with the horse on July 23, 1938, occasioned the death of the insured, independently and exclusively of disease and all other causes. The verdict on the former trial was set aside because the evidence was deemed insufficint to establish this ultimate fact. Reference has been made to the testimony given upon the former trial and also to that given upon the second trial. On the second trial the plaintiff introduced the testimony of a doctor of experience and repute, who did not testify on the first trial. His qualifications as an expert stand undisputed. This doctor testified that he has made a special study of the heart and injuries that may be inflicted upon it. He testified positively that in his opinion the insured sustained injuries to the heart during the tussle with the horse and that these injuries, and these alone, independently and exclusively of disease and all other causes, brought about his death. He testified that a person in the state of good health that the undisputed evidence disclosed the insured enjoyed up to July 23, 1938, could not have been suffering with coronary thrombosis. He also testified that it would have been impossible for a person suffering with coronary thrombosis to have engaged in the arduous struggle with the horse which the evidence disclosed that the insured did. In short, the testimony of the doctor was to the effect that the insured was not afflicted with coronary thrombosis prior to the tussle with the horse, but that according to the facts disclosed by the proof, and assumed in the hypothetical questions, the coronary thrombosis was occasioned by the struggle with the horse. He also testified positively that in his opinion the insured did not have influenza at all and that the condition or symptoms which the doctor who attended the insured attributed to influenza when he was first called, were in fact the symptoms of, and directly attributable to, the injury to the heart and nothing else. He further testified that even though the insured had contracted influenza subsequent to the injuries, that influenza could not have caused his death, and had nothing to do with his death; and

that in his opinion the death was caused alone by the injuries to the heart sustained in the tussle with the horse on July 23, 1938.

No error is assigned on any ruling made in the admission of the testimony of this medical expert, except as to one question, and the objection there was that the testimony sought to be elicited would tend to contradict and impeach the testimony of the other doctor who testified for the plaintiff. The defendant called other medical experts who in many particulars disagreed with the doctor who was called by the plaintiff and gave opinions to a contrary effect. All the doctors seem agreed that the insured did suffer from an injury to the heart, but the doctors called by the defendant did not agree that the insured's death was occasioned by injuries the insured may have sustained in the tussle with the horse.

In this case testimony of medical experts was peculiarly pertinent. 22 C. J. 661 et seq.; Rogers, Expert Testimony, 2d ed. § 203; 5 Enc. of Evidence, p. 640. Such testimony was introduced by both parties and great reliance is placed thereon by both. The credibility of the different witnesses, including the medical experts, and the weight to be given to their testimony, were for the jury. 5 Enc. of Evidence, p. 637; 22 C. J. 728, 729. The jury resolved the conflict in the evidence in favor of the plaintiff.

An injury may be said to be the sole producing cause of death when it stands out as the predominating factor in causing death. The active efficient cause that sets in motion a train of events which bring about a result without the intervention of any force from a new and independent source may be regarded as the direct, proximate and sole cause. According to the undisputed testimony on this case, the insured was a strong man, in vigorous health up to the time he received the injury. There was ample evidence from which the jury could find that he sustained an injury to his heart on July 23d, 1938, solely from the struggle with the horse; that he became immediately ill and wholly disabled as a result of such injury, and from no other cause; that he continued to be in that condition until his death; and that his death resulted directly from the injury he sustained on July 23d, and from such injury alone. The jury by their verdict so found, and this finding is binding on this court.

It is next contended that the court erred in permitting the plaintiff

to testify to statements and manifestations of pain by the insured. The plaintiff was asked to state whether her husband, when he came home on July 23d, "complained of anything;" whether he reported an injury; but not to say what, if anything he said. She was also asked whether he made any exclamations of pain. Defendant's counsel objected to these questions on the ground that the testimony called for was incompetent, irrelevant, and immaterial, not part of the res gestae, self-serving and hearsay. ' The objections were overruled and both questions were answered in the affirmative. Thereafter the witness testified to exclamations and manifestations of pain by the insured. No error was committed by the rulings complained of. There was no attempt to prove a narration by the insured of a past transaction, or even statements made by him as to past pain or symptoms. The questions were restricted to statements concerning, or manifestations of, pain suffered by him at the time. The questions were framed so as to exclude any statement by the insured as to past pain or suffering. The testimony which the questions sought, and which the answers gave, was admissible and it would have been error to have excluded it. Bennett v. Northern P. R. Co. 2 N. D. 112, 49 N. W. 408, 13 L.R.A. 465; Puls v. Grand Lodge, A. O. U. W. 13 N D. 559, 102 N. W. 165; Halverson v. Zimmerman, 60 N. D. 113, 232 N. W. 754; 3 Jones, Commentaries on Evidence, 2d ed. p. 2226, § 1213; 8 Enc. of Evidence, pp. 572 et seq.; 6 Wigmore, Evidence, 3d ed. §§ 1718 et seq.

The rule applicable to such testimony is stated as follows in Puls v. Grand Lodge, A. O. U. W. 13 N. D. 559, 102 N. W. 165 (syllabus par. 5), supra: "Declarations of a sick or injured person as to the nature, symptoms and effects of the disease or injury under which he is suffering at the time are competent evidence in an action wherein the nature and cause of the malady are in question."

Jones (3 Jones, Commentaries on Evidence, 2d ed. § 1213) says: "Where the bodily or mental feelings of a person are to be proved, the usual and natural exclamations and expressions of such person, which are the spontaneous manifestations of pain and naturally flow from the pain being suffered by him at the time, are competent and original evidence. Pain and suffering, like motives and sentiments, are mental conditions which can be made known only by means of outward manifestation or act of the afflicted person, and when this outward manifes-

tation is a spontaneous declaration, statement, or utterance illustrative of present condition, it is known as a 'verbal act.'"

It is next contended that the court erred in permitting the doctor, who was called as a witness upon the second trial (but who did not testify upon the first trial) to give testimony that tended to contradict the testimony given by the doctor who was called as a witness by the plaintiff upon the first trial and whose testimony, also, was offered and received upon the second trial. As has been indicated, the doctor who testified upon the first trial stated that it was his view that the death of the insured "was due to coronary thrombosis and influenza;" and, also, that it was his opinion "that these conditions were in all probability brought about by this injury or his struggle with the horse." The doctor who was called and testified on the second trial, and who did not testify upon the first trial, stated that it was his opinion that the insured did not have influenza at all and that the ailment from which he was suffering was coronary thrombosis and that this alone caused his death. The defendant contends that inasmuch as this testimony contradicted the testimony of the doctor who first testified that it operated to *impeach* the doctor who gave the first testimony and, hence, fell within the ban of the general rule that a party may not impeach a witness whom he has voluntarily made such. The contention is not well founded. 70 C. J. pp. 1156 et seq.; 6 Jones, Commentaries on Evidence, 2d ed. § 2432, p. 4814; 3 Wigmore, Evidence, 3d ed. §§ 897, 898, 907.

Jones (6 Jones, Commentaries on Evidence, 2d ed. p. 4814, § 2432), says: "The general rule that one may not impeach his own witness must not be understood as implying that the party calling a witness is bound to accept his version of material facts as correct. On the contrary it is very clear that the one producing a witness may prove material facts by any other competent evidence, even though the effect of such testimony is directly to contradict his own witness; 'and this, not only when it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief.' It is immaterial that the effect of such testimony is incidentally to discredit the former witness and to tend to show that he is unworthy of belief. It is immaterial whether the testimony thus adduced shows that the witness was mis-

taken or whether it shows that he has wilfully perverted the facts. The party calling him may question the truth of his statements of fact, either by independent opposing evidence or by inference or arguments drawn from the testimony of the party himself. The object of the inquiry is not to discredit the witness, but to prove the facts relevant to the controversy; and this should be permitted whatever the incidental result may be upon the credit of any witness. This is now recognized as the settled law, without reference to whether the party calling the witness in question is taken by surprise or not."

This disposes of the errors assigned on the appeal from the judgment and from the order denying the motion for judgment notwithstanding the verdict or for a new trial. There remains for consideration the appeal from the order denying the motion to amend the judgment.

The plaintiff in her complaint made no reference to, or demand for, interest. The demand for relief in the complaint was "for judgment against the defendant for the sum of two thousand dollars ($2,000) together with the costs and disbursements of this action." In submitting the case to the jury the court submitted forms of verdict. The form of verdict submitted to be used in event the jury found in favor of the plaintiff read as follows: "We, the jury, duly empanelled and sworn to try the above entitled action, do find for the plaintiff, Clara Jacobson, and against the defendant, Mutual Benefit Health and Accident Association, a corporation, and assess plaintiff's damages in the sum of $2,000." This is the verdict that the jury returned.

The trial court entered an order for judgment upon the verdict "that the plaintiff do have judgment against the defendant for the sum of $2,120 same being the principal amount due on the policy, together with interest thereon to the 14th day of March, 1940, together with the costs and disbursements to be taxed by the clerk." Judgment was entered in accordance with the order for judgment, and thereafter the defendant moved that the judgment so entered be amended and modified by deducting therefrom the sum of $120 allowed for interest upon the grounds: (1) that plaintiff did not ask for interest as damages in the complaint; (2) that interest was not found by the jury nor included in the verdict, and, (3) that the judgment as rendered does not conform to the pleadings or the verdict. The motion was denied.

If the plaintiff were entitled to recover the principal sum of the policy, she was also entitled to recover interest on that sum from the day the same became payable, and the right to recover such principal sum became vested in her. Comp. Laws 1913, § 7142; Stutsman County v. Dakota Trust Co. 47 N. D. 228, 231, 181 N. W. 586, 587; 30 Am. Jur. 10, Interest, § 7; 17 C. J. pp. 811, 919, 954; 1 Sedgwick, Damages, 9th ed. §§ 179, 301; 1 Sutherland, Damages, 4th ed. §§ 286, 346; and 1 C. J. p. 518. Section 7142, Comp. Laws 1913, provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law or the act of the creditor from paying the debt."

This statute set at rest questions that had given rise to contrariety of opinion among courts of last resort in this country. This statute fixes interest as the measure of damages for the retention of money that is due and payable to another (Comp. Laws 1913, §§ 6070, 7139, 7140; Stutsman County v. Dakota Trust Co. 47 N. D. 228, 181 N. W. 586, supra), and prescribes the circumstances in which the person to whom the money is payable is entitled to interest as a matter of right. This case is clearly within the statute. The amount which the defendant had agreed to pay to the plaintiff upon the death of the insured in the circumstances stated in the policy was definite and certain, and the day when the plaintiff was entitled to payment was certain. Both were fixed by the terms of the policy. The defendant refused to pay on the ground there was no liability on its part at all; and there was nothing due and payable to the plaintiff. The great question in this case was whether the defendant was right or wrong in its contention that there was no liability on its part at all. In the trial court it was decided that the defendant was wrong in its contention, and that the defendant under the terms of the policy, in fact and in law, became obligated to pay to the plaintiff the principal sum of the policy, at the time the policy stipulated such payment should be made. The defendant failed to make payment as it had agreed. It retained the money in violation of the legal rights of the plaintiff, and the plaintiff as a consequence became entitled as a matter of legal right to the compensation which § 7142, supra, prescribes. Stutsman County v. Dakota

Trust Co. supra; 1 Sutherland, Damages, 4th ed. § 346; 33 C. J. p. 147; 1 C. J. p. 518, § 363; 37 C. J. p. 657; 1 Sedgwick, Damages, 9th ed. pp. 573, 574; Grand Lodge, A. O. U. W. v. Bagley, 164 Ill. 340, 45 N. E. 538; Hardy v. Lancashire Ins. Co. 166 Mass. 210, 44 N. E. 209, 33 L.R.A. 241, 55 Am. St. Rep. 395; Baker v. Northern Assur. Co. 214 Mich. 540, 183 N. W. 61.

Did the plaintiff by failing to demand interest in the complaint waive the right to interest? Or did such failure operate to withdraw from the case all question as to interest, and deprive the court of the right to allow interest and render judgment therefor? These questions must be answered in the negative. The rule supported by the great weight of authority is that where interest is the legal consequence of the debt or obligation, and is recoverable as damages as a matter of law, it may be recovered although there is no allegation in the complaint that there is interest due and payable to the plaintiff. 11 Enc. Pleading & Practice, p. 435; 33 C. J. p. 257; 14 Standard Proc. p. 121. If the complaint sets forth a debt or obligation which bears interest as a matter of law, the allegations of the complaint, in effect, also set forth a claim for interest. However, there is considerable conflict in the authorities as to whether interest may be recovered in any case unless it is asked for in the ad damnum clause, or prayer, of the complaint. 33 C. J. p. 147, § 886; 11 Enc. Pleading & Practice, p. 435; 14 Standard Proc. pp. 121 et seq.; Baker v. Northern Assur. Co. 214 Mich. 540, 183 N. W. 61, supra; Spokane v. Costello, 42 Wash. 182, 84 P. 652. But we are aware of no authority to the effect that the failure to demand or pray for interest alone operates as a waiver of the right to recover interest that is recoverable as a matter of law. Even the decisions which hold that interest cannot be recovered unless it is demanded in the ad damnum clause of the complaint, recognize that the failure to make such demand does not operate as a waiver of the right, but that the complaint may be amended so as to make the proper demand for interest.

Waiver is mainly a question of intention. "To constitute a waiver there must be an intention to relinquish a known right, an intentional forbearance to enforce a right." 67 C. J. pp. 302, 303.

In this case the conduct of the plaintiff negatives any intention to relinquish her legal right to interest. On the former trial of this action

the issues were the same as on the second trial. The complaint was the same; there was no demand or prayer for interest. The verdict was the same,—there was an award to the plaintiff of the principal sum only, namely, $2,000, and no mention was made in the verdict of interest. After the former trial, the trial court also made an order for judgment allowing interest and judgment was rendered for interest. The judgment appealed from on the former appeal contained an allowance for interest. On that appeal no complaint was made by the defendant because interest had been included in the judgment.

Did the fact that the complaint contained no demand for interest operate to eliminate the question of interest from consideration in the case, and deprive the court of the right to allow interest and render judgment therefor?

As said, there is a conflict in the authorities as to whether in cases where interest is recoverable as a matter of law the claim for interest must be included in the prayer for judgment. In Steen v. Neva, 37 N. D. 40, 163 N. W. 272, the view was expressed that where the demand for judgment is for the amount of the principal only, judgment may not include interest, as the judgment would exceed "the sum claimed in the ad damnum clause of the complaint." The view was further expressed that in such case the court may allow an amendment of the ad damnum clause so as to include the amount of the interest. 37 N. D. 46, 163 N. W. 274.

It is unnecessary for us to determine in this case which is the correct rule. It is, also, unnecessary to determine here whether the views expressed on this question in Steen v. Neva are correct or incorrect. In this case the court was authorized to consider the question of interest, and to determine whether plaintiff was entitled to interest, without regard to whether in the first instance plaintiff was or was not required to make demand therefor in the prayer for judgment. Our statute provides: "The relief granted to the plaintiff, if there is no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him relief consistent with the case made by the complaint and embraced within the issue." Comp. Laws 1913, § 7680.

Under this statute, where issue is joined by answer and there is a trial, the prayer for relief in the complaint becomes immaterial and

the court may grant to the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. 1 Estee, Pleadings, 3d ed. § 332, pp. 176, 177; 49 C. J. p. 174; Lane v. Gluckauf, 28 Cal. 289, 87 Am. Dec. 121; 16 Enc. Pleading & Practice, p. 795; Bekker v. White River Valley R. Co. 28 S. D. 84, 132 N. W. 797; Missouri River Transp. Co. v. Minneapolis & St. L. R. Co. 34 S. D. 1, 147 N. W. 82; 3 Wait, Practice, 606. In this case the facts set forth in the complaint and established by the evidence entitled the plaintiff as much to recover interest as to recover principal. Grand Lodge, A. O. U. W. v. Bagley, 164 Ill. 340, 45 N. E. 538, supra. As the issue stood at the close of the trial, the plaintiff, if entitled to recover the principal, was also entitled to recover interest.

Was it error, prejudicial to the defendant, for the trial court to render judgment for interest, inasmuch as the verdict did not mention interest?

In this case there was no issue of fact as to the amount the plaintiff would be entitled to recover, if she was entitled to recover anything. The sole question was whether she was entitled to recover at all. As the case stood when it was submitted to the jury, the plaintiff was as much entitled to recover interest as she was to recover the principal sum. If she was entitled to recover the principal sum, she, also, was entitled as a matter of law to interest on that sum from the day the right to recover the principal sum vested in her. § 7142, supra. Whether plaintiff was entitled to recover at all was, under the evidence, a question for the jury; but the amount the plaintiff was entitled to recover (if she was entitled to recover at all) was a question of law. Comp. Laws 1913, § 7608. The trial court should have instructed the jury to the effect that in case they found for the plaintiff upon the issues of fact submitted to them for determination, they should return a verdict for $2,000, and interest on that sum from the day that sum became payable to the plaintiff under the terms of the policy. It is true our statutes provide that when a verdict is found for the plaintiff in an action for the recovery of money, the jury must also find the amount of the recovery (Comp. Laws 1913, § 7634); but if the sole issue of fact is whether plaintiff is entitled to recover anything, and where the plaintiff, if entitled to recover at all, is entitled as a matter of law to recover a definite amount, then the verdict is

not rendered invalid because the amount of recovery is not stated, or is stated incorrectly. In such case, the court may, upon the return of the verdict, order it amended so as to state the amount the plaintiff is entitled to recover as a matter of law under the pronouncement upon the issues of fact (Comp. Laws 1913, § 7632) made by the jury in the verdict. English v. Goodman, 3 N. D. 129, 54 N. W. 540; Fletcher Bros. v. Nelson, 6 N. D. 94, 69 N. W. 53; Marsh v. Kendall, 65 Kan. 48, 68 P. 1070; Clark v. Lude, 63 Hun 363, 18 N. Y. S. 271; Peetsch v. Quinn, 7 Misc. 6, 27 N. Y. S. 323; note in 10 Ann. Cas. p. 753; 64 C. J. p. 1100. Or the court may, as it did here, treat the verdict as amended and order judgment accordingly. English v. Goodman, supra; St. Louis, E. R. & W. R. Co. v. Oliver, 17 Okla. 589, 87 P. 423, 10 Ann. Cas. 748; Wallingford v. Alcorn, 75 Okla. 295, 183 P. 726; McAfee v. Dix, 101 App. Div. 69, 91 N. Y. S. 464; Calnon v. Fidelity-Phenix F. Ins. Co. 114 Neb. 194, 206 N. W. 765.

The judgment and the orders appealed from must be, and they are, affirmed.

BURR, Ch. J., and MORRIS, BURKE, and NUESSLE, JJ., concur.

CHRISTIANSON, J. (on petition for rehearing). Defendant has petitioned for a rehearing. In the petition it is said: "The defendant does not seek a rehearing on the law in regard to disability, but solely for reconsideration of the facts and the record as to disability." The defendant asserts "that the evidence is not sufficient to sustain the verdict of the jury that the insured was immediately, continuously and wholly disabled from the date of the accident until the date of his death as required by the terms of the insurance contract." Defendant calls attention to the fact that the plaintiff, in an affidavit in proof of claim for indemnity, in answer to two questions stated that the insured continued to work nineteen days after the accident, and that he quit work on August 11th; and it is argued that these statements should carry more weight than any testimony she may have given upon the second trial in conflict with such statements. It is, also, argued that the testimony of the son of the insured fails to show that he "was with his father" and attended to his father's work for more than two days

a week. It is, also, argued that the evidence does not establish that the cause of death was accident, but establishes rather that the cause of death was disease.

Every aspect of the question of sufficiency of the evidence was given careful consideration by the court before the former decision was made. But, in view of the earnest petition for rehearing we have again reviewed the evidence and reconsidered its sufficiency. The fact that the plaintiff made statements before suit inconsistent with her testimony did not render her testimony inadmissible, nor did it render it unbelievable as a matter of law. Neither statement "is inherently incredible, and as between the two inconsistent statements, it was for the jury to decide which one was true." Nimmins v. Forsberg, ante, 417, 294 N. W. 663.

We adhere to the views expressed in the former opinion: "There was ample evidence from which the jury could find that he (the insured) sustained an injury to his heart on July 23d, 1938, solely from the struggle with the horse; that he became immediately ill and wholly disabled as a result of such injury, and from no other cause; that he continued to be in that condition until his death; and that his death resulted directly from the injury he sustained on July 23d, and from such injury alone. The jury by their verdict so found, and this finding is binding on this court." The petition for a rehearing is denied.

Burr, Ch. J., and Morris, Burke, and Nuessle, JJ., concur.